QUINN EMANUEL URQUHART & SULLIVAN, LLP
    Steven G. Madison (Bar No. 101006)
    stevemadison@quinnemanuel.com
    Anthony P. Alden (Bar No. 232220)
    anthonyalden@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:   (213) 443-3000
Facsimile:    (213) 443-3100

Attorneys for Defendants Viktor Khrapunov,
Leila Khrapunova, Iliyas Khrapunov, and
Madina Ablyazova

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CITY OF ALMATY, a foreign state,<br><br>      Plaintiff,<br><br>      vs.<br><br>VIKTOR KHRAPUNOV, an individual;<br>LEILA KHRAPUNOV, an individual;<br>ILIYAS KHRAPUNOV, an individual;<br>MADINA ABLYAZOVA a/k/a<br>MADINA KHRAPUNOVA, an<br>individual; and DOES 1 through 10,<br><br>      Defendants. | Case No. 2:15-cv-02628-FMO-CW<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION, OR IN THE ALTERNATIVE, ON THE BASIS OF *FORUM NON CONVENIENS***<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>[Declarations of Anthony P. Alden, Viktor Khrapunov, Leila Khrapunova, and Madina Ablyazova, Exhibits thereto, Request for Judicial Notice, and [Proposed] Order filed concurrently herewith]<br><br>Judge: Honorable Fernando M. Olguin<br>Hearing Date:   September 24, 2015<br>Hearing Time:   10:00 a.m. |

# NOTICE OF MOTION

PLEASE TAKE NOTICE that, on September 24, 2015, at 10:00 a.m., in Courtroom 22 of the United States District Court for the Central District of California—Western Division, located at 312 North Spring Street in Los Angeles, California, Defendants Viktor Khrapunov, Leila Khrapunova, Iliyas Khrapunov, and Madina Ablyazova (collectively "Defendants") will and hereby do move this Court for an order dismissing Plaintiff City of Almaty's Complaint for Damages, Injunctive Relief, and Other Equitable Relief, with prejudice.

The Motion will seek dismissal of Plaintiff's Complaint in its entirety because:   (1) there is no personal jurisdiction over Defendants, and (2) the doctrine of *forum non conveniens* compels that this case be litigated in the more appropriate forum of Switzerland.

This Motion is based upon this Notice of Motion and Motion; the attached Memorandum of Points and Authorities; the concurrently-filed Declarations of Anthony P. Alden, Viktor Khrapunov, Leila Khrapunova, and Madina Ablyazova, and the exhibits thereto; the concurrently-filed Request for Judicial Notice; and such additional evidence and argument as may be presented at or before the hearing on this matter.

As set forth in the accompanying Declaration of Anthony P. Alden, this Motion is made following a conference of counsel pursuant to Local Rule 7-3.

DATED: July 6, 2015                    QUINN EMANUEL URQUHART &
                                       SULLIVAN, LLP


                                       By:   /s/ Anthony P. Alden
                                          Steven G. Madison
                                          Anthony P. Alden

                                          Attorneys for Defendants Viktor
                                          Khrapunov, Leila Khrapunova, Iliyas
                                          Khrapunov, and Madina Ablyazova

# **TABLE OF CONTENTS**

**Page**

Table of Authorities ................................................................................................ ii

PRELIMINARY STATEMENT ............................................................................ 1

STATEMENT OF FACTS ..................................................................................... 2

ARGUMENT .......................................................................................................... 5

I.   THE COURT LACKS PERSONAL JURISDICTION OVER
     DEFENDANTS ............................................................................................. 5

    A.   Plaintiff Cannot Establish General Jurisdiction Over Defendants ......... 6

    B.   Plaintiff Likewise Cannot Establish Specific Jurisdiction Over
    Defendants ............................................................................................... 7

        1.   Defendants have not purposefully availed themselves of
        the California forum .................................................................... 8

        2.   Defendants Viktor, Leila, and Madina's *de minimis*
        contacts are unrelated to Plaintiff's claims ................................. 9

        3.   Exercising personal jurisdiction over Defendants would
        also be unreasonable ................................................................. 10

II.  ALTERNATIVELY, DISMISSAL IS WARRANTED BASED ON
     *FORUM NON CONVENIENS* ...................................................................... 16

    A.   Switzerland is an Adequate and Available Forum ............................... 16

    B.   Each of the Private Interest Factors Favors Switzerland ..................... 17

    C.   Each of the Public Interest Factors Also Favors Switzerland .............. 19

CONCLUSION .................................................................................................... 20

# TABLE OF AUTHORITIES

**Page**

## Cases

*In re Alcon S'holder Litig.*,
  719 F. Supp. 2d 263 (S.D.N.Y. 2010) ......................................................... 17

*Amoco Egypt Oil Co. v Leonis Navigation Co.*,
  1 F.3d 848 (9th Cir. 1993) ........................................................... 10, 12, 14

*Asahi Metal Indus. Co. v. Solano City*,
  480 U.S. 102 (1987) ....................................................................... 5, 11, 13

*Bancroft & Masters, Inc. v. Augusta Nat. Inc.*,
  223 F.3d 1082 (9th Cir. 2000) ...................................................................... 9

*Brunswick GmbH v. Bowling Switz., Inc.*,
  No. C.A. 07-471 JJF, 2008 WL 2795936 (D. Del. July 18, 2008) ............. 17

*Chem Lab Prods., Inc. v. Stepanek*,
  554 F.2d 371 (9th Cir. 1977) ........................................................................ 6

*Data Disc, Inc. v. Systems Techn. Assocs., Inc.*,
  557 F.2d 1280 (9th Cir. 1977) ...................................................................... 6

*Delta Alcohol Distribs. v. Anheuser-Busch Int'l, Inc.*,
  28 F. Supp. 2d 682 (E.D. Mich. 2014) ....................................................... 17

*Dibdin v. South Tyneside NHS Healthcare Trust*,
  No. CV 12-00206 DDP (PLAx), 2013 WL 327324 (C.D. Cal. Jan. 29, 2013) ... 20

*Do Rosario Veiga v. World Meteorological Org.*,
  486 F. Supp. 2d 297 (S.D.N.Y. 2007) ........................................................ 17

*Doe v. Unocal Corp.*,
  27 F. Supp. 2d 1174 (C.D. Cal. 1998), *aff'd*, 248 F.3d 915 (9th Cir. 2001) ......... 6

*Ecodisc Tech. v. DVD Format/Licensing Corp.*,
  711 F. Supp. 2d 1074 (C.D. Cal. 2010) ........................................................ 8

*Fischer v. United States*,
  No. EDCV02–691–OMP(SGL), 2003 WL 21262103 (C.D. Cal. May 30, 2003). 8

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
  __ U.S. __, 131 S. Ct. 2846 (2011) ............................................................. 7

*Helicopteros Nacionales de Colbumbia, S.A. v. Hall*,
  466 U.S. 408 (1984) ...................................................................................... 6

*Hirsch v. Blue Cross, Blue Shield of Kansas City*,
  800 F.2d 1474 (9th Cir. 1986) ...................................................................... 7

*Horteir, Inc. v. Gladstone*,
  744 F. Supp. 2d 1035 (N.D. Cal. 2011) ........................................................ 8

*Int'l Shoe Co. v. Washington*,
  326 U.S. 310 (1945) ................................................................. 6

*Interpane Coatings, Inc. v. Austl. & N.Z. Banking Grp. Ltd.*,
  732 F. Supp. 909 (N.D. Ill. 1990) ........................................ 19

*LaSala v. UBS, AG*,
  510 F. Supp. 2d 213 (S.D.N.Y. 2007) ................................. 17

*Leetsch v. Freedman*,
  260 F.3d 1100 (9th Cir. 2001) ............................................. 18

*Loya v. Starwood Hotels & Resorts Worldwide, Inc.*,
  583 F.3d 656 (9th Cir. 2009) ............................................... 18

*Lueck v. Sundstrand Corp.*,
  236 F.3d 1137 (9th Cir. 2001) .................................. 17, 18, 19

*In re: Lupron*,
  245 F. Supp. 2d 280 (D. Mass. 2003) ..................................... 6

*Mainstream Media v. River*,
  No. C 08–3623 PJH, 2009 WL 2157641 (N.D. Cal. July 17, 2009) ..................... 9

*Mavrix Photo, Inc. v. Brand Techs., Inc.*,
  647 F.3d 1218 (9th Cir. 2011) ............................................... 5

*Medicor AG v. Arterial Vascular Eng'g*,
  No. C-96-2979 MHP, 1997 WL 68564 (N.D. Cal. Jan. 30, 1997)
  *aff'd*, 141 F.3d 1177 (9th Cir. 1998) ................................. 17

*Mitan v. Feeney*,
  497 F. Supp. 2d 1113 (C.D. Cal. 2007) ................................ 12

*National Asbestos Workers Medical Fund v. Philip Morris, Inc.*,
  86 F. Supp. 2d 137 (E.D.N.Y. 2000) ....................................... 6

*Pacific Atlantic Trading Co. v. M/V Main Express*,
  758 F.2d 1325 (9th Cir. 1985) ........................................ 11, 15

*Panda Brandywine Corp. v. Potomac Elec. Power Co.*,
  253 F.3d 865 (5th Cir. 2001) ................................................. 8

*Piper Aircraft Co. v. Reyno*,
  454 U.S. 235 (1981) ........................................................... 16

*Rano v. Sipa Press, Inc.*,
  987 F.2d 580 (9th Cir. 1993) ................................................. 5

*Schwarzenegger v. Fred Martin Motor Co.*,
  374 F.3d 797 (9th Cir. 2004) ............................................. 6, 7

*Sher v. Johnson*,
  911 F.2d 1357 (9th Cir. 1990) ............................................. 5, 6

*Shute v. Carnival Cruise Lines,*
    897 F.2d 377 (9th Cir. 1990) .................................................................. 10, 11

*Terracom v. Valley Nat'l Bank,*
    49 F.3d 555 (9th Cir. 1995) ......................................................................... 10

*Threlkeld v. Tucker,*
    496 F.2d 1101 (9th Cir.), *cert. denied*, 419 U.S. 1023 (1974) ............................. 6

*Tymoshenko v. Firstash,*
    No. 11–CV–2794 (KMW), 2013 WL 1234943 (S.D.N.Y. March 27, 2013) ...... 14

*Vivendi SA v. T-Mobile USA Inc.,*
    586 F.3d 689 (9th Cir. 2009) ........................................................................ 20

*Yahoo! Inc. v. La Ligue Contre Le Racisme et L'Anti-Semitisme,*
    433 F.3d 1199 (9th Cir. 2006) ........................................................................ 8

*Yavuz v. 61 MM, Ltd.,*
    576 F.3d 1166 (10th Cir. 2009) .................................................................... 17

## <u>Rules</u>

Fed. R. Civ. P. 4(k)(1)(A) ................................................................................. 6

## MEMORANDUM OF POINTS AND AUTHORITIES
### Preliminary Statement

After failing to timely effect service on Defendants in a related action in this Court, Plaintiff has initiated an entirely new proceeding alleging the same claims, premised on the same allegations, against Viktor Khrapunov, Leila Krapunova, Iliyas Krapunov, and Madina Ablyazova.   The new complaint suffers from the same inadequacies and deficiencies that resulted in the Court *sua sponte*, and then upon motion, dismissing Plaintiff's complaints in the related action.   The new complaint, however, suffers from an additional, insurmountable, obstacle—all of the Defendants are citizens of Kazakhstan and residents of Switzerland with no or minimal contacts with California and the United States.   As a result, the Court lacks personal jurisdiction over each Defendant.

None of the Defendants are citizens or residents of California or the United States.   Indeed, Viktor and Leila have never stepped foot in California.   Madina has visited California while on vacation, but those trips were unrelated to Plaintiff's claims.   Although Plaintiff vaguely alleges other contacts by these Defendants purportedly related to its claims, all such allegations are controverted by evidence or so vague and conclusory that they cannot establish jurisdiction.   And even if Plaintiff had pleaded adequate contacts with California—which it has not—it cannot establish personal jurisdiction because the purported *de minimis* contacts caused no harm in California or to any California resident.

What is more, even if there were sufficient contacts, it would nevertheless be unreasonable for the Court to exercise personal jurisdiction over any Defendant. The most important factor in deciding the reasonableness of personal jurisdiction is the burden on the defendant.   Here, all Defendants are foreign nationals with no or minimal contacts with California.   The Supreme Court has long held that compelling nonresidents to defend themselves in U.S. legal system imposes a substantial burden which weighs heavily against exercising personal jurisdiction.

1    Exercising jurisdiction over Defendants would also create the potential for

2  conflict with the sovereignty of the state of their residency, Switzerland.   All of the

3  alleged underlying illegal acts occurred in Kazakhstan and the illicit profits were

4  purportedly transferred to Switzerland.   Indeed, Plaintiff concedes that the Swiss

5  authorities have been working to address Plaintiff's allegations for over two years.

6  As a result, the Swiss authorities have access to much more evidence, many more

7  witnesses, and are already intimately familiar with the procedural and substantive

8  aspects of Kazakh law that will be key to debunking the same allegations Plaintiff

9  makes here.   Moreover, Swiss law provides Plaintiff with effective remedies to

10  redress any wrongs it may prove it suffered.   In all respects, Switzerland is a

11  superior, alternative forum.

12    California's interest in this matter, on the other hand, is at best *de minimis*.

13  No party to this action resides in California and no harm is alleged to have occurred

14  in California or to any California resident.   To litigate this matter in this District, or

15  any other California court, would needlessly consume substantial judicial resources

16  and overburden a judicial system already strained by its current caseload.   All of the

17  relevant factors, therefore, weigh decisively against exercising personal jurisdiction

18  in this case.   In the alternative, the Court should dismiss this action because each of

19  the factors governing the *forum non conveniens* analysis favors dismissal.   There is

20  simply no justification for allowing a *foreign* plaintiff to drag *foreign* defendants

21  into a California court based on alleged transactions that took placed in two *foreign*

22  countries.

## Statement of Facts

23

24    **Kazakhstan Background.**   Plaintiff City of Almaty is an administrative

25  division of the Republic of Kazakhstan, a unitary state with a central supreme

26  government.   Almaty is the largest city in (and former capital of) Kazakhstan, a

27  former Soviet republic that declared independence following the dissolution of the

28  Soviet Union in 1991.   The U.S. State Department notes that Kazakhstan "has a

1  government system dominated by President Nursultan Nazarbayev," who has

2  wielded complete power since the country's independence.   Declaration of

3  Anthony P. Alden ("Alden Decl."), Ex. A at 1.   Mr. Nazarbayev "controls the

4  legislature and the judiciary as well as regional and local governments," including

5  that of the subnational unit, Almaty.   *Id.*   There is no independent judiciary, and

6  "[c]orruption [is] evident at every stage of the judicial process."   *Id.* at 7.

7         **The Related Action.**   On May 13, 2014, Almaty filed a lawsuit in this Court

8  (Case No. 2:14CV03650), alleging an international RICO conspiracy spanning over

9  a decade against 15 defendants (the "related action"):   the former *akim* (a leader of

10  a municipality, district, or provincial government in Kazakhstan) of Almaty, Viktor

11  Khrapunov ("Viktor"); his former wife, Leila Khrapunova ("Leila"); Viktor and

12  Leila's son, Iliyas Khrapunov ("Iliyas"); Iliyas's wife Madina Ablyazova

13  ("Madina"); Viktor and Leila's daughter Elvira Kudryashova ("Elvira"); Elvira's

14  husband, Dmitry Kudryashov ("Dmitry"), and six entities alleged to be involved in

15  Viktor's "racketeering scheme."   Dkt. No. 1, 2:14CV03650.   On January 16, 2015,

16  the Court dismissed the four Switzerland-based defendants, Viktor, Leila, Iliyas and

17  Madina (collectively, the "Switzerland-based Defendants") due to Plaintiff's

18  unexcused failure to effect timely service.   Dkt. No. 68, 2:14CV03650.   A Motion

19  to Dismiss the Second Amended Complaint is currently pending in the related

20  action.   Dkt. No. 59, 2:14CV03650.

21         **The Present Action.**   On April 8, 2015, almost three months after the

22  Switzerland-based Defendants were dismissed from the related action, Plaintiff filed

23  a new suit ("Complaint") against them.   Dkt. No. 1, 2:15CV02628.[1]   Although

24  neither Plaintiff nor any Defendant is a resident of California or the United States,

25  Plaintiff initiated this new action in the Central District of California.   Compl. ¶¶ 9-

26  10.   The Complaint is substantially similar to the Second Amended Complaint in

27  ───────────────

28  [1]   On May 4, 2015, the Court deemed the two matters related and consented to the transfer of the present action to this Court.   Dkt. No. 8, 2:15CV02628.

the related action except that all Defendants are foreign nationals residing outside the United States.   The Complaint alleges that Viktor abused his position as *akim* from 1997-2004 to cause the sale of 80 pieces of Almaty-owned real-estate to his family and friends at depressed prices.   *Id*. ¶¶ 2, 19, 22-24, 34-35.   These real estate transactions are alleged to have occurred over 10 years ago in Kazakhstan under then-prevailing Kazakh law.   *Id.*   The Complaint alleges that Viktor and his accomplices then sold the parcels of real estate at their true value and transferred the $300 million in allegedly illicit proceeds by laundering them to Switzerland and the United States.   *Id.* ¶¶ 2-3, 25-27, 34-35.

   **Viktor and Leila.**   Defendants Viktor and Leila have had virtually no contact with the United States, let alone California.   They are Kazakh citizens who currently reside in Switzerland, where they have lived since relocating from Kazakhstan in 2007.   *See* Declaration of Viktor Khrapunov ("Viktor Decl.") ¶¶ 1, 5; Declaration of Leila Khrapunov ("Leila Decl.") ¶¶ 1, 4.   Neither of them have ever stepped foot in California.   Viktor Decl., ¶ 6; Leila Dec., ¶ 5.   They have never purchased or owned any real property or assets in California, the United States or any of its territories.   Viktor Decl. ¶ 7; Leila Decl. ¶ 6.   They have never transferred or caused to be transferred any funds or other assets into the United States.   Viktor Decl. ¶ 12; Leila Decl., ¶ 11.   They have no interest in the alleged investments by Iliyas referenced in the Complaint.   Viktor Decl., ¶ 10; Leila Decl., ¶ 9.   Nor have they ever been sued in the United States or commenced any legal proceedings in the United States.   Viktor Decl., ¶ 11; Leila Decl., ¶ 10.   Viktor and Leila's only connection to the United States is their daughter Elvira and Elvira's immediate family, who reside in California.   Viktor Decl. ¶ 14, Leila Decl., ¶ 13.

   **Iliyas and Madina.**   Viktor and Leila's son, Iliyas, and his wife, Madina, are also Kazakh citizens who reside in Switzerland with their two children, and have lived there since 2007.   Compl. ¶ 10; Declaration of Madina Khrapunov ("Madina Decl.") ¶¶ 1, 4.   Madina has never owned, either directly or indirectly, any real

property in California or the United States, including the properties identified in the Complaint and located at 606 and 628 North Alta Drive in Beverly Hills.   *Id.* ¶ 7. Madina has never transferred or caused to be transferred any assets or funds into the United States.   *Id.* ¶ 6.   Nor has Madina made any investments in the United States and has no interest in the investments by Iliyas alleged in the Complaint.   *Id.* ¶¶ 7-8.   In the past seven years, Madina has visited California five times for vacation. *Id.* ¶ 5.   During the five vacations, she spent a total of approximately four months in the United States.   *Id.* ¶ 5.   Madina has never owned any assets in the United States, aside from a few personal belongings she bought while on vacation in the United States.   *Id.* ¶ 7.   Except for being sued by Plaintiff in this and the related action, Madina has never been sued in the United States, nor has she commenced any legal proceeding in the United States.   *Id.* ¶ 9.

<u>**Argument**</u>

## I.   THE COURT LACKS PERSONAL JURISDICTION OVER DEFENDANTS

It is Plaintiff's burden to prove the Court has personal jurisdiction over Defendants.   *See Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990).   The burden is especially heavy where, as here, a foreign plaintiff demands the court exercise personal jurisdiction over foreign defendants.   *See Rano v. Sipa Press, Inc.*, 987 F.2d 580, 588 (9th Cir. 1993) ("We have held that litigation against an alien defendant requires a higher jurisdictional barrier than litigation against a citizen from a sister state."); *Asahi Metal Indus. Co. v. Solano City*, 480 U.S. 102, 115 (1987) ("Great care and reserve should be exercised when extending [United States] notions of personal jurisdiction into the international field.").

To meet its burden, Plaintiff cannot rest on the "bare allegations" of its complaint, especially where, as here, key allegations are controverted.   *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011).   Nor can the Court accept as true allegations that are conclusory or controverted by evidence.

*See Chem Lab Prods., Inc. v. Stepanek*, 554 F.2d 371, 372 (9th Cir. 1977) ("[M]ere allegations of a complaint, when contradicted by affidavits, are not enough to confer personal jurisdiction over a non-resident defendant."); *Data Disc, Inc. v. Systems Techn. Assocs., Inc.*, 557 F.2d 1280, 1284 (9th Cir. 1977) ("[W]e may not assume the truth of allegations in a pleading which are contradicted by affidavit.").

Plaintiff must prove the existence of sufficient contacts with the relevant forum to show that the exercise of personal jurisdiction does not offend traditional notions of fair play and substantial justice. *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Where, as here, a foreign national is served outside the United States pursuant to the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, the plaintiff must prove that the defendant had sufficient contacts with the *forum state*, not national contacts with the United States. *See Doe v. Unocal Corp.*, 27 F. Supp. 2d 1174, 1181 (C.D. Cal. 1998), *aff'd*, 248 F.3d 915 (9th Cir. 2001); *see also In re: Lupron*, 245 F. Supp. 2d 280, 288 n.23 (D. Mass. 2003); *National Asbestos Workers Medical Fund v. Philip Morris, Inc.*, 86 F. Supp. 2d 137, 140 (E.D.N.Y. 2000). Because the District Court resides in California, the applicable California long-arm statute, Cal. Civ. Proc. § 410.10, applies. *See Doe*, 27 F. Supp. 2d at 1184; Fed. R. Civ. P. 4(k)(1)(A). California law extends personal jurisdiction to the "outer limits of due process." *Threlkeld v. Tucker*, 496 F.2d 1101, 1103 (9th Cir.), *cert. denied*, 419 U.S. 1023 (1974).

### A.    Plaintiff Cannot Establish General Jurisdiction Over Defendants

A defendant is subject to a court's general jurisdiction only where the defendant has "substantial" or "continuous and systematic" contacts with the forum state. *See Helicopteros Nacionales de Colbumbia, S.A. v. Hall*, 466 U.S. 408, 415-16 (1984); *Sher*, 911 F.2d 1357. This is an "exacting standard" and the contacts must "approximate physical presence" in the forum. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004). Indeed, the Supreme Court

recently held that such contacts had to be "so 'continuous and systematic' as to render them *essentially at home* in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, __ U.S. __, 131 S.Ct. 2846, 2851 (2011) (emphasis added).

Here, Plaintiffs do not and cannot allege that the Defendants have had "continuous and systematic" contacts with California or the United States.   As discussed above, Defendants are citizens of Kazakhstan and residents of Switzerland.   Viktor Decl. ¶¶ 1, 5; Leila Decl. ¶¶ 1, 4; Madina Decl. ¶¶ 1, 4; Compl. ¶¶ 9-10.   Indeed, Viktor and Leila have never even visited California. Viktor Decl., ¶ 6; Leila Decl., ¶ 5.   Their contacts with the rest of the United States are minimal, amounting to a couple of visits, the last of which was a short work trip over 14 years ago, in June 2001.   Viktor Decl., ¶ 6; Leila Decl., ¶ 5.   The extent of Madina's contacts is some vacations in the last seven years.   Madina Decl. ¶ 5. Although Iliyas is alleged to have limited business contacts with California, those contacts do not come close to approximating "physical presence." *Schwarzenegger*, 374 F. 3d at 801.   Accordingly, there is no basis for exercising general jurisdiction over any Defendant.

**B.    Plaintiff Likewise Cannot Establish Specific Jurisdiction Over Defendants**

The Ninth Circuit has established a three-part test to evaluate specific jurisdiction:

(1) The nonresident defendant must do some act or consummate some transaction within the forum or perform some act by which [it] purposefully avails [it]self of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws.

(2) the claim must be one which arises out of or results from the defendant's forum-related activities.

(3) the exercise of jurisdiction must be reasonable.

*Hirsch v. Blue Cross, Blue Shield of Kansas City*, 800 F.2d 1474, 1477 (9th Cir. 1986).   Vague and conclusory allegations—such as that Leila "transferred [] stolen

funds into the United States" or "attempted to launder funds" in the United States, Compl. ¶¶ 27, 64—are insufficient.   As are allegations that Defendants "conspired with each other" to launder funds in the United States, and that certain Defendants acted with the "agreement and knowledge" of the others.   Compl. ¶¶ 15, 57.   *See Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001) (holding that "the prima-facie-case requirement does not require the Court to credit conclusory allegations, even if uncontroverted"); *Horteir, Inc. v. Gladstone*, 744 F. Supp. 2d 1035, 1041 (N.D. Cal. 2011) (holding it would be "improper" to exercise personal jurisdiction based on "acts performed in California by [defendant's] alleged co-conspirators"); and *Fischer v. United States*, No. EDCV02–691–OMP(SGL), 2003 WL 21262103, at *3 (C.D. Cal. May 30, 2003) ("It would violate due process to assert personal jurisdiction over these out-of-state defendants based solely on plaintiff's bare allegations of a nationwide conspiracy").   California law "does not recognize conspiracy as a basis for acquiring jurisdiction over a foreign defendant." *Ecodisc Tech. v. DVD Format/Licensing Corp.*, 711 F. Supp. 2d 1074, 1089 (C.D. Cal. 2010).   As a result, "actions taken by co-conspirators in furtherance of the conspiracy cannot be attributed to a conspirator for purposes of establishing personal jurisdiction." *Id.*

> 1.   Defendants have not purposefully availed themselves of the California forum

Because Plaintiff asserts a RICO claim, which is akin to an intentional tort, in order to prove that Defendants purposefully availed themselves of "the privilege of conducting activities" in California, it must demonstrate that Defendants "(1) committed an intentional tort, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Yahoo! Inc. v. La Ligue Contre Le Racisme et L'Anti-Semitisme*, 433 F. 3d 1199, 1206 (9th Cir. 2006) (citations omitted).

Here, Plaintiffs have not and cannot establish that any of the Defendants

-8-

caused any harm that was suffered in California (or the United States), much less that they *knew* their actions would cause harm in California.   Even assuming Plaintiff's allegations are true—which they are not—no California resident was harmed, nor was any person harmed in California.   *See Bancroft & Masters, Inc. v. Augusta Nat. Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000) (holding that the "express aiming" requirement of personal jurisdiction "encompasses wrongful conduct individually targeting a known forum resident"); *Mainstream Media v. River*, No. C 08–3623 PJH, 2009 WL 2157641, at *7 (N.D. Cal. July 17, 2009) (finding lack of personal jurisdiction because "the harm resulting from the theft was felt by [defendant], which is not located in California").

As noted above, Viktor and Leila have no contacts with California, and very limited previous contact with the United States.   Madina has visited California on vacation but none of those trips relate to Plaintiff's claims in this litigation.   None of them have purchased or owned property in the United States, made investments in the United States, or transferred funds or other assets into the United States. Viktor Decl. ¶¶ 7-12; Leila Decl. ¶¶ 6-11; Madina Decl. ¶¶ 7-8.   Iliyas is alleged to have purchased or caused to be purchased two homes in California.[2]   Compl., ¶¶ 57-58, 60, 62, 66.   But even if true, none of these acts caused any harm in California or any harm to any California resident.   Therefore, these alleged contacts cannot establish personal jurisdiction over Iliyas, much less the other Defendants. For this reason alone, Defendants are not subject to personal jurisdiction in California.

> 2.   <u>Defendants Viktor, Leila, and Madina's *de minimis* contacts are unrelated to Plaintiff's claims</u>

The Ninth Circuit has held that "[t]he second prong of the specific jurisdiction test is met if 'but for' the contacts between the defendant and the forum state, the

---

[2]   Viktor's and Leila's two visits to other parts of the United States—the last of which was over 14 years ago—do not relate to Plaintiff's claims.

1   cause of action would not have arisen."   *Terracom v. Valley Nat'l Bank*, 49 F. 3d

2   555, 561 (9th Cir. 1995).   Setting aside Plaintiff's conclusory allegations of

3   conspiracy—as the case law requires—the *de minimis* contacts of Defendants

4   Viktor, Leila, and Madina to California bear no relation to Plaintiff's claims and do

5   not meet the "but for" test.   As discussed above, Viktor and Leila have no contacts

6   with California, and Madina's vacations to California to visit family do not relate to

7   Plaintiff's claims.[3]   Accordingly, there is no specific jurisdiction over Viktor, Leila

8   and Madina for the additional reason that they have no contacts with California (or

9   the United States) that relate to Plaintiff's claims.

10              3.      Exercising personal jurisdiction over Defendants would also be

11                      unreasonable

12        Even if there were sufficient minimum contacts between California and one

13   or more of the Defendants—and there is not—the Court should nevertheless grant

14   Defendants' motion because the exercise of personal jurisdiction would be

15   unreasonable.   The Ninth Circuit has identified seven factors that must be balanced

16   to determine the reasonableness of specific personal jurisdiction:

17          [a] [T]he extent of purposeful interjection; [b] the burden on the
            defendant to defend the suit in the chosen forum; [c] the extent of
18          conflict with the sovereignty of the defendant's state; [d] the forum
            state's interest in the dispute; [e] the most efficient forum for judicial
19          resolution of the dispute; [f] the importance of the chosen forum to the
            plaintiff's interest in convenient and effective relief; [g] and the
20          existence of an alternative forum.

21   *Amoco Egypt Oil Co. v Leonis Navigation Co.*, 1 F.3d 848, 851 (9th Cir. 1993),

22   *quoting Shute v. Carnival Cruise Lines*, 897 F.2d 377, 386 (9th Cir. 1990).   Each of

23   these factors counsels in favor of dismissing Plaintiff's claims.

24              Factor (a):   Any purposeful interjection was minimal

25        The Ninth Circuit has held that, even it is shown that the defendant

26

27   [3]   Although the allegations that Iliyas purchased or caused to be purchased two
     homes in California may arguably relate to Plaintiff's claims, Plaintiffs have not and
28   cannot establish any harm to a California resident and thus no personal jurisdiction.

purposefully directed its activities towards the forum state, "this factor is no longer given any weight." *Shute*, 897 F. 2d at 386.   Nonetheless, to the extent this factor remains relevant, it weighs strongly against personal jurisdiction here.   Defendants have had virtually no contacts with California or the United States.   And, with the exception of Iliyas, none of the alleged contacts relate to Plaintiff's claims in this matter.

> Factor (b):   Proceeding in this forum would impose a heavy burden on Defendants

The burden on the defendant is the most important factor in the reasonableness analysis and weighs heavily against personal jurisdiction in this case. *See Pacific Atlantic Trading Co. v. M/V Main Express*, 758 F.2d 1325, 1330 (9th Cir. 1985) (holding that the burden on the defendant "is the primary concern" in determining whether personal jurisdiction exists).   The burden on Defendants, who are all foreign nationals residing in Switzerland with virtually no contacts with California, would be substantial.   None of the Defendants have ever resided in California or the United States; none have any experience litigating in California or the United States; none are familiar with the U.S. court system; and none are native English speakers.   Indeed, neither Viktor nor Leila even speaks English.   Viktor Decl., ¶ 13; Leila Decl., ¶ 12.   To demand that Defendants now defend themselves in a California court, especially while already involved with proceedings ongoing in Switzerland related to the same subject matter, would indisputably impose a heavy and unnecessary burden.   As the Supreme Court has long recognized, "[t]he unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders."   *Asahi*, 48 U.S. at 114.

> Factor (c):   There is a real risk of conflict with Swiss tribunals

All Defendants are citizens of Kazakhstan and residents of Switzerland. "Where, as here, the defendant is from a foreign nation rather than another state, the

-11-

sovereignty barrier is high and undermines the reasonableness of personal jurisdiction." *Amoco*, 1 F.3d at 852.   Additionally, because—according to Plaintiff itself—the Swiss authorities have been investigating Plaintiff's allegations against Defendants for more than two years, this factor weighs especially heavily against personal jurisdiction in this case.   *See Mitan v. Feeney*, 497 F. Supp. 2d 1113, 1122 (C.D. Cal. 2007) (finding that exercise of personal jurisdiction would be unreasonable in part based on ongoing adjudication of issues in another forum).

Plaintiff itself has implicitly acknowledged the conflict by refusing to produce relevant discovery in the related action concerning the Swiss investigations into Defendants on the basis that doing so "would violate Article 293 of the Swiss Criminal Code."   Alden Decl. Exs. M (Plaintiff's Responses and Objections to Defendants' First Set of Special Interrogatories ("Interrogatory Responses")), at 2:13-17; N (Plaintiff's Responses and Objections to Defendant's First Set of Requests for Admission ("RFA Responses")), at 2:18-24; O (Opp. to Mot. to Compel, at 7:24-28).   For example, under the pretext of Article 293 of the Swiss Criminal Code, Plaintiff has refused to produce even the most basic information about the ongoing investigation into Defendants by the Swiss authorities, refused to identify witnesses with information and documents related to the Defendants and the Swiss investigation, and refused to identify sources containing documents related to the investigations.   Ex. M, at 5:1-7:10; 8:7-19 (Interrogatory Responses).   In effect, Plaintiff demands that the Court subordinate Defendants' right to relevant discovery under U.S. law by relying on purportedly conflicting foreign law.

Additionally, by pursing legal action in California while proceedings are on-going in Switzerland, Plaintiff raises the spectre of having this Court render interpretations and applications of Swiss and Kazakh law at odds with the interpretation and application of those laws by Swiss authorities.   Although Plaintiff has sought to downplay the centrality of foreign law, because Plaintiff would have to prove that each of the over 80 real estate actions at issue during

-12-

1   Viktor's tenure as *akim* was illegal under Kazakh law, the interpretation and

2   application of Kazakh law would be paramount.   *See* Ex. M, at 73:5-17

3   (Interrogatory Responses) ("Defendants have violated and are continuing to violate

4   the following laws and regulations:   Criminal Code of the Republic of Kazakhstan,

5   Articles 176 Conversion or Embezzlement of Entrusted Other People's Property,

6   177 (Fraud), 193 (Legalization of Monetary Funds or Other Property Obtained

7   Illegally, 235 (Creation and Guidance of an Organized Criminal Group or Criminal

8   Association, and Participation in Criminal Organization, 307 (Abuse of Official

9   Powers), 311 (Acceptance of a Bribe)…."); *see also* Ex. N, at 13:20-14:18 (RFA

10  Responses).   Proceeding with this case against Defendants with virtually no

11  connection to the United States presents a serious risk of conflicts with Swiss

12  sovereignty.

13              Factors (d) and (f):   California's interest in this matter is *de minimis,* as

14              is Plaintiff's interest in litigating here

15          Given California's *de minimis* interest in Plaintiff's claims, there is no

16  justification for allowing a foreign plaintiff to utilize California's limited resources

17  to pursue claims against foreign residents arising primarily under foreign laws.   *See*

18  *Asahi Metal Industry Co.*, 480 U.S. at 114 ("Because the plaintiff is not a California

19  resident, California's legitimate interests in the dispute have considerably

20  diminished.").   There is no credible reason why Plaintiff has an interest in litigating

21  here, rather than Kazakhstan or Switzerland.   The vast majority of Plaintiff's

22  allegations concern allegedly unlawful activity in Kazakhstan and Switzerland.

23  Compl. ¶¶ 34–47; Ex. M, at 11:1-33:27; 45:14-68:13 (Interrogatory Responses).

24  Plaintiff alleges "theft" of over $300 million occurring in Kazakhstan and the

25  transfer of those funds to Switzerland, where all Defendants reside.   Compl. ¶ 2.

26  Even accepting Plaintiff's allegations as true for the purposes of this motion, the

27  only portion of the funds purportedly transferred to California was for the purchase

28

-13-

of four houses.[4]   More to the point, as discussed above, neither the State of California nor any California resident has been harmed by Defendants' alleged activity.   The lack of a forum state interest in the instant litigation "weighs heavily against the reasonableness" of finding personal jurisdiction in this case.   *Amoco*, 1 F.3d at 852; *see also Tymoshenko v. Firstash*, No. 11–CV–2794 (KMW), 2013 WL 1234943, at *5 (S.D.N.Y. March 27, 2013) ("[C]ourts have routinely found jurisdiction to be unreasonable where neither party has ties to the forum.").

<u>Factors (e) and (g):   Switzerland is an available and more efficient forum</u>

By far the most efficient forum for resolving this dispute is Switzerland.   *See Amaco*, 1 F.3d at 852 (existence of potential witnesses and evidence not being in forum state places strong burden on defendant).   The conduct underlying all of Plaintiff's claims purportedly took place years ago in Kazakhstan at the direction of a former Kazakh official—*i.e.*, the alleged "systematic[]" theft of money from the City of Almaty "as a result of Viktor's corrupt use of his political power."   Compl. ¶ 2.   By Plaintiff's own admission, the next critical step in the alleged pattern of racketeering activity took place in Switzerland, not the United States.   Viktor and Leila are alleged to have "fled" to Switzerland; all Defendants live in Switzerland; and all of them are alleged to have "attempted to launder and hide the stolen money in Switzerland."   Compl. ¶ 2.

In contrast, the only conduct alleged to have taken place in the United States amounts to the purchase of four homes in California; an investment in a medical device company in New York; "[u]pon information and belief," an investment in a New York hotel; and, again on "information belief," three money transfers into the United States.   Compl. ¶¶ 53-58, 61-66.   Only the purchases of the residences are alleged to have occurred in California.

---

[4]   Iliyas's purported non-California contacts are also minimal, limited to an alleged investment in a hotel and a medical equipment company.

1    Under these circumstances, it is indisputable that the bulk of relevant

2    documents and witnesses are in Kazakhstan and Switzerland, not California.

3    Indeed, in the related action, most of the documents Plaintiff identified in its initial

4    disclosures are to be found in those two countries, including "Documents relating to

5    the Defendants' systematic looting of funds belonging to the people of Almaty and

6    tracing such funds out of Kazakhstan" and "Communications with Swiss authorities

7    regarding Defendants' wrongdoing."   Ex. P, at 5:23-26 (Initial Disclosures of

8    Plaintiff the City of Almaty).   These documents, and potential witnesses from

9    Kazakhstan, are much more conveniently available to a Swiss court than a

10   California court.   *See Pac. Atl. Trading Co. v. M/V Main Express*, 758 F.2d 1325,

11   1331 (9th Cir. 1985) ("The site where the injury occurred and where evidence is

12   located usually will be the most efficient forum.").

13   At the instigation of the Kazakh authorities, proceedings relating to these very

14   allegations have been on-going in Switzerland for over two years.   *See* Compl.

15   ¶¶ 31-33.   Kazakhstan has already sought the assistance of Swiss judicial officials

16   by making exactly the same allegations it seeks to make here.   *See* Alden Decl.,

17   Exs. B and C (February 2012 Request for Mutual Legal Assistance); Ex. D

18   (September 14, 2012 Request for Mutual Legal Assistance).   Swiss officials have

19   even informed Kazakhstan that it can delegate the ongoing Kazakh proceedings to

20   Switzerland, and the Swiss courts would adjudicate *all* of Plaintiff's allegations in

21   one forum.   *See* Alden Decl., Exs. E and F.

22   Finally, not only is Switzerland a more convenient forum in terms of available

23   parties, evidence, and witnesses, but legal proceedings in Switzerland can—if

24   appropriate—provide Plaintiff with effective remedies.   Swiss law provides for

25   what are known as "adhesive" civil claims in connection with criminal proceedings,

26   which would allow Plaintiff to seek exactly the same monetary compensation it

27   seeks here.   *See id.*, Exs. G and H (Swiss Criminal Procedure Code, Articles 118,

28   119, and 122); Exs. I and J (Swiss Criminal Code Articles 137 (misappropriation of

property), 138 (same), 260ter (criminal organization), 305bis (money laundering), 312 (abuse of public office), 314 (misconduct in public office)).   In short, this case may be efficiently and effectively prosecuted in Switzerland.

* * *

As the foregoing detailed analysis demonstrates, there is simply no basis for personal jurisdiction over Defendants in this case.   At bottom, a *foreign* plaintiff seeks to utilize the limited resources of this Court suing *foreign* defendants with virtually no connection to the State based on alleged misconduct occurring over ten years ago in a *foreign* country.   Particularly given on-going proceedings in Switzerland relating to precisely the same allegations, there is no basis to drag Swiss residents into this Court.

**II.   ALTERNATIVELY, DISMISSAL IS WARRANTED BASED ON**
***FORUM NON CONVENIENS***

Even if Plaintiff could establish personal jurisdiction over Defendants (which it cannot), this case should still be dismissed on the ground of *forum non conveniens*.   Dismissal on this basis is appropriate when:   (a) any adequate alternative forum exists, and (b) the balance of private and public factors favors dismissal.   *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 (1981) (reinstating district court's dismissal of action based on *forum non conveniens*).   As discussed above, Switzerland presents an alternative forum that is (a) far closer geographically, substantively, and procedurally to all parties, the relevant law, facts and evidence; (b) significantly less burdensome to witnesses and the parties; and (c) has a far greater interest in the allegations than does the Central District of California.

**A.   Switzerland is an Adequate and Available Forum**

An alternate forum will be deemed suitable unless "the remedy provided by the alternative forum is so clearly inadequate or unsatisfactory that it is no remedy at all . . . ."   *Piper*, 454 U.S. at 254.   Courts have long held that Switzerland's judicial

-16-

1    system is available and adequate to provide just and appropriate remedies to

2    litigants.   *See, e.g.*, *Medicor AG v. Arterial Vascular Eng'g*, No. C-96-2979 MHP,

3    1997 WL 68564, *7 (N.D. Cal. Jan. 30, 1997) *aff'd*, 141 F.3d 1177 (9th Cir. 1998)

4    (unpublished) ("Upon weighing the private interest and public interest factors . . .

5    the balance tips heavily in favor of litigating this action in Switzerland."); *Delta*

6    *Alcohol Distribs. v. Anheuser-Busch Int'l, Inc.*, 28 F. Supp. 2d 682, 690 (E.D. Mich.

7    2014) ("[T]he courts of Geneva, Switzerland, are an available and adequate

8    alternative forum.").[5]   Indeed, Swiss courts have been held an adequate forum

9    specifically for allegations of money laundering like those here.   *See LaSala v.*

10   *UBS, AG*, 510 F. Supp. 2d 213, 223 (S.D.N.Y. 2007) (granting dismissal in favor of

11   Switzerland in action involving money laundering, because Swiss laws are designed

12   to prevent money laundering); *Yavuz v. 61 MM, Ltd.*, 576 F.3d 1166, 1177 (10th Cir.

13   2009) (affirming district court's dismissal in favor of Switzerland in a financial

14   fraud and RICO case).

15       **B.      Each of the Private Interest Factors Favors Switzerland**

16            To determine whether private interest factors favor a foreign forum, "a court

17   should evaluate the materiality and importance of the anticipated evidence and

18   witnesses' testimony and then determine their accessibility and convenience to the

19   forum."   *Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1146 (9th Cir. 2001) (internal

20   quotations omitted).   The relevant private interest factors are:   (a) the residence of

21   the parties and witnesses; (b) the forum's convenience to the litigants; (c) access to

22   physical evidence and other sources of proof; (d) whether unwilling witnesses can

23   be compelled to testify; (e) the cost of bringing witnesses to trial; (f) the

24   enforceability of the judgment; and (g) all other practical problems that make a trial

25   _____

26        [5]    *See also In re Alcon S'holder Litig.*, 719 F. Supp. 2d 263, 279 (S.D.N.Y.
     2010); *Do Rosario Veiga v. World Meteorological Org.*, 486 F. Supp. 2d 297, 306
27   (S.D.N.Y. 2007); *Brunswick GmbH v. Bowling Switz., Inc.*, No. C.A. 07-471 JJF,
     2008 WL 2795936, at *1 (D. Del. July 18, 2008).
28

1   easy, expeditious and inexpensive.   *Id.* at 1145.   Generally, the private factors will

2   weigh in favor of a foreign forum when the events giving rise to a suit occurred

3   there.   *See, e.g.*, *Loya v. Starwood Hotels & Resorts Worldwide, Inc.*, 583 F.3d 656,

4   664–65 (9th Cir. 2009) (affirming dismissal in favor of Mexico where injury took

5   place there); *Leetsch v. Freedman*, 260 F.3d 1100, 1104–05 (9th Cir. 2001)

6   (similar).   Each of the private interest factors compels dismissal of this case.

7           All of the Defendants reside in Switzerland and have made Switzerland their

8   home.   Plaintiff alleges that Defendants attempted to launder or hide their ill-gotten

9   gains in Switzerland.   *See* Compl. ¶¶ 26, 29.   Many relevant witnesses, including

10  bank personnel and corporate officers, are thus likely to be in Switzerland, as are the

11  documents pertaining to Defendants' purported transactions.[6]   Witnesses and

12  documents pertaining to the alleged real estate transactions underlying Plaintiff's

13  claims are likely to be in Kazakhstan, which is much closer to Switzerland than to

14  California.   Plaintiff is also likely to rely on testimony and documents from

15  officials of the current regime in Kazakhstan, whom Plaintiff itself claims are

16  currently investigating the Khrapunov family.   *See* Compl. ¶¶ 31–33.   Switzerland

17  is a more convenient location for these officials.   Indeed, the Kazakh government

18  has already sent a delegation to Switzerland to participate in the on-going Swiss

19  proceedings.   *See* Alden Decl., Exs. K and L (May 9, 2014, letter from Geneva

20  Prosecution Office).   In contrast, the cost of bringing these witnesses and

21  documents, which will have to be translated into English, from Switzerland and

22  Kazakhstan to California—where the only alleged connection is four residential

23  purchases—will be substantial and highly burdensome to the litigants.

24          Further complicating matters, the Court does not have the power to compel

25  unwilling third-party witnesses in Switzerland to testify or produce documents.   *See*

26

27     [6]   The majority of the relevant documents are not in English, and will have to

28  be translated at significant cost in order to be used here.

*Lueck*, 236 F.3d at 1146–47.   And experts on Swiss and Kazakh law will need to be retained and brought to the United States, as Plaintiff's allegations are grounded entirely on purported violations of Kazakh and Swiss law.   *See Interpane Coatings, Inc. v. Austl. & N.Z. Banking Grp. Ltd.*, 732 F. Supp. 909, 917 (N.D. Ill. 1990) ("This added burden [of expert testimony on Australian law] affects not only the public interest in avoiding wasted time, but also the private interest in avoiding excessive inconvenience and expense.").

In light of these factors—and given that Plaintiff could seek to enforce a Swiss judgment against Defendants—Switzerland is a far more logical, economical, and suitable forum for Plaintiff's claims than California.   The nature of the allegations here—which will require Defendants to attempt to muster evidence of events that allegedly took place almost ten years ago from countries half-way around the world—will make defending this action in California unnecessarily difficult and expensive.

**C.**    **Each of the Public Interest Factors Also Favors Switzerland**

The public interest factors a court should weigh when considering a *forum non conveniens* dismissal include:   (a) local interest in the lawsuit; (b) the court's familiarity with governing law; (c) burden on local courts and juries; (d) congestion in the court; and (e) the costs of resolving a dispute unrelated to this forum.   *See Lueck*, 236 F.3d at 1147.   Here, each of these factors favors Switzerland.

As already discussed, California has little interest in adjudicating this lawsuit, which primarily relates to alleged conduct by Swiss residents taking place in Switzerland and Kazakhstan.   *Second*, this Court, though highly sophisticated, is unlikely to have much familiarity with the civil, criminal, administrative and procedural laws of Switzerland and Kazakhstan, dating back to at least 1997, implicated in this case.   *See Lueck*, 236 F.3d at 1144 (holding the doctrine of *forum non conveniens* was designed in part to help courts avoid conducting complex exercises in comparative law).   *Third, fourth, and fifth*, the costs to and burdens on

this congested Court and Los Angeles jurors in this action are unjustifiable on any reasonable analysis, given that Switzerland is an available alternative forum and that Swiss courts have already been dealing with these allegations for more than two years.  *See Vivendi SA v. T-Mobile USA Inc.*, 586 F.3d 689, 696 (9th Cir. 2009) ("The burden on local courts and juries unconnected to the case and the costs of resolving a dispute unrelated to the forum also favor dismissal."); *see also Dibdin v. South Tyneside NHS Healthcare Trust,* No. CV 12-00206 DDP (PLAx), 2013 WL 327324, at *7 (C.D. Cal. Jan. 29, 2013) ("The Central District of California has a very demanding docket, with many thousands of cases brought each year.  The District also faces a number of unfilled judicial vacancies.").

Because Switzerland is a more than adequate alternative forum, and due to the fact that the public and private factors favor dismissal, this Court should dismiss this action on the basis of *forum non conveniens*.

## Conclusion

For all the foregoing reasons, Defendants respectfully request that the Court dismiss the Complaint in its entirety with prejudice.

DATED: July 6, 2015                    QUINN EMANUEL URQUHART &
                                       SULLIVAN, LLP


                                       By   /s/ Anthony P. Alden
                                          Steven G. Madison
                                          Anthony P. Alden

                                          Attorneys for Defendants Viktor
                                          Khrapunov, Leila Khrapunov, Iliyas
                                          Khrapunov, and Madina Ablyazova

DEFENDANTS' MOTION TO DISMISS COMPLAINT FOR LACK OF PERSONAL JURISDICTION