LATHAM & WATKINS LLP
   David J. Schindler (Bar No. 130490)
      *david.schindler@lw.com*
   Manny Abascal (Bar No. 171301)
      *manny.abascal@lw.com*
   Julie R. F. Gerchik (Bar No. 237764)
      *julie.gerchik@lw.com*
355 South Grand Avenue
Los Angeles, California  90071-1560
Telephone:  +1.213.485.1234
Facsimile:  +1.213.891.8763

Attorneys for Plaintiff the City of Almaty

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CITY OF ALMATY, a foreign state,<br><br>                    Plaintiff,<br><br>        v.<br><br>VIKTOR KHRAPUNOV, an individual, *et al.*,<br><br>                    Defendants. | Case No. CV14-2826-FMO-CW<br><br>Judge:  Hon. Fernando M. Olguin<br>Magistrate Judge:  Hon. Carla Woehrle<br><br>**PLAINTIFF CITY OF ALMATY'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION, OR IN THE ALTERNATIVE, ON THE BASIS OF *FORUM NON CONVENIENS***<br><br>Action Filed:  April 15, 2015<br><br>Hearing Date:  September 24, 2015<br>Time:  10:00 a.m.<br>Courtroom:  22 |

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

PLAINTIFF ALMATY'S OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS FOR LACK OF PERSONAL JURISDICTION, OR IN THE
ALTERNATIVE, ON THE BASIS OF *FORUM NON CONVENIENS*

# **TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION ................................................................................ 1

II.  FACTUAL BACKGROUND REGARDING
JURISDICTIONAL ARGUMENTS ................................................... 3

    A.  Defendants' Racketeering Included Deliberate Attempts
to Use the United States to Steal and Launder Assets, and
To Hide Their Conduct from Kazakh and Swiss
Authorities .............................................................................. 3

    B.  Defendants Deliberately Chose the United States to
Engage in Their Money Laundering Activities ...................... 5

        1.  Laundering Activities Using California Bank
Accounts ...................................................................... 5

        2.  Laundering Activity Through Purchases of
California Real Property .............................................. 6

        3.  Laundering Activity Through Real Property and
Other Transactions Elsewhere in the U.S. ................... 8

    C.  Defendants Submitted False Declarations In Support of
Their Motion To Dismiss ......................................................... 9

III.  THIS COURT HAS PERSONAL JURISDICTION OVER
EACH DEFENDANT ....................................................................... 10

    A.  Legal Standard for Personal Jurisdiction ............................... 10

    B.  Defendants Are Subject to This Court's Specific
Jurisdiction ............................................................................ 11

        1.  Defendants Purposefully Directed Affirmative
Actions at California to Further their Racketeering
Scheme ........................................................................ 11

        2.  Almaty's Claims Arise out of Defendants'
Activities in California .............................................. 14

        3.  Given Defendants' Extensive California Activities
Causing Harm to Almaty, it is Fair, Just, and
Reasonable for the Court to Exercise Jurisdiction
over Defendants .......................................................... 14

    C.  In the Alternative, Defendants Are Subject To
Jurisdiction Pursuant To Rule 4(k)(2) of the Federal
Rules of Civil Procedure ......................................................... 16

    D.  The Court Should Permit Jurisdictional Discovery ................ 18

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

i

PLAINTIFF ALMATY'S OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS FOR LACK OF PERSONAL JURISDICTION, OR IN THE
ALTERNATIVE, ON THE BASIS OF *FORUM NON CONVENIENS*

IV.  THERE IS NO ADEQUATE ALTERNATIVE FORUM FOR ALMATY'S CLAIMS AND THEREFORE THIS CASE CANNOT BE DISMISSED ON THE BASIS OF *FORUM NON CONVENIENS* ................................................................18

    A.  Switzerland Is Not An Adequate Alternative Forum ........................19

    B.  Defendants Fail to Demonstrate that the Private Interest Factors Support Dismissal ..............................................................20

    C.  Defendants Fail to Demonstrate that the Public Interest Factors Support Dismissal ..............................................................21

V.  CONCLUSION ..........................................................................................22

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

ii

PLAINTIFF ALMATY'S OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS FOR LACK OF PERSONAL JURISDITCTION, OR IN THE
ALTERNATIVE, ON THE BASIS OF *FORUM NON CONVENIENS*

1

2

## **TABLE OF AUTHORITIES**

3

**Page(s)**

4

## **CASES**

5

6

*ACORN v. Household Int'l, Inc.*,
211 F. Supp. 2d 1160 (N.D. Cal. 2002) ...................................................... 11

7

*AT&T v. Compagnie Bruxelles Lambert*,
8   94 F.3d 586 (9th Cir. 1996) ...................................................................... 11

9

*Ballard v. Savage*,
10   65 F.3d 1495 (9th Cir. 1995) ..................................................................... 10

11

*Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*,
12   223 F.3d 1082 (9th Cir. 2000), *rev'd on other grounds Yahoo! Inc.
v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199
13   (9th Cir. 2006)

14   ............................................................................................. 11, 12, 18

15   *Boston Telecomms. Group, Inc. v. Wood*,
588 F.3d 1201 (9th Cir. 2009)................................................................ 20, 21

16

17   *Calder v. Jones*,
465 U.S. 783 (1984) ................................................................................ 11, 12

18

*Carijano v. Occidental Petroleum Corp.*,
19   643 F.3d 1216 (9th Cir. 2011)..................................................................... 20

20

*Caruth v. International Psychoanalytical Ass'n*,
21   59 F.3d 126 (9th Cir. 1995) ........................................................................ 11

22

*Cheng v. Boeing Co.*,
23   708 F.2d 1406 (9th Cir. 1983)...................................................................... 19

24

*Contact Lumber Co. v. P.T. Moges Shipping Co. Ltd.*,
25   918 F.2d 1446 (9th Cir. 1990)...................................................................... 19

26

*Data Disc, Inc. v. Systems Tech. Assoc., Inc.*,
27   557 F. 2d 1280 (9th Cir. 1977)..................................................................... 18

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

iii

PLAINTIFF ALMATY'S OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS FOR LACK OF PERSONAL JURISDITCTION, OR IN THE
ALTERNATIVE, ON THE BASIS OF *FORUM NON CONVENIENS*

*Dole Food Co. v. Watts*,
　303 F.3d 1104 (9th Cir. 2002) ........................................................ 10, 11, 19, 20

*Exec. Comm. Representing the Signing of the Archdiocese of the*
　*Western U.S. v. Kaplan*,
　2004 U.S. Dist. LEXIS 31799 (C.D. Cal. Sept. 16, 2004) ................................ 12

*Fiscus v. Combus Fin. AG*,
　2006 U.S. Dist. LEXIS 41016 (D.N.J. June 20, 2006) ..................................... 19

*Hassen v. Nahyan*,
　2010 WL 9538408 (C.D. Cal. Sept. 17, 2010) .................................................. 16

*Holland Am. Line, Inc. v. Wartsila N. Am., Inc.*,
　485 F.3d 450 (9th Cir. 2007) ............................................................................. 17

*Lacey v. Cessna Aircraft Co.*,
　932 F.2d 170 (3rd Cir. 1991) ............................................................................. 19

*Larsen v. Lauriel Invs., Inc.*,
　161 F. Supp. 2d 1029 (D. Ariz. 2001) ............................................................... 18

*LaSala v. UBS, AG*,
　510 F. Supp. 2d 213 (S.D.N.Y. 2007) ............................................................... 20

*Leetsch v. Freedman*,
　260 F.3d 1100 (9th Cir. 2001) ........................................................................... 19

*Lueck v. Sundstrand Corp.*,
　236 F.3d 1137 (9th Cir. 2001) ........................................................................... 19

*Lugosch v. Congel*,
　443 F.Supp.2d 254 (N.D.N.Y. 2006) ................................................................. 12

*Maiz v. Virani*,
　253 F.3d 641 (11th Cir. 2001) ........................................................................... 12

*Medicor AG v. Arterial Vascular Eng'g*,
　1997 WL 68564 (N.D. Cal. Jan. 30, 1997) *aff'd*, 141 F.3d 1177
　(9th Cir. 1998) .................................................................................................... 21

*Monegro v. Rosa*,
　211 F.3d 509 (9th Cir. 2000) ....................................................................... 19, 22

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

iv

PLAINTIFF ALMATY'S OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS FOR LACK OF PERSONAL JURISDITCTION, OR IN THE
ALTERNATIVE, ON THE BASIS OF *FORUM NON CONVENIENS*

*Monster Cable Products, Inc. v. Euroflex S.R.L.*,
  642 F. Supp. 2d 1001 (N.D. Cal. 2009) ...................................................... 16, 17

*Pebble Beach Co.v. Caddy*,
  453 F.3d 1151 (9th Cir. 2010) ...................................................................... 16, 17

*Philippines v. Marcos*,
  862 F.2d 1355 (9th Cir. 1988) ............................................................................. 13

*Planned Parenthood, Inc. v. American Coalition of Life Activists*,
  945 F. Supp. 1355 (D. Or. 1996) ........................................................................ 14

*Sher v. Johnson*,
  911 F.2d 1357 (9th Cir. 1990) ............................................................................. 10

*Shute v. Carnival Cruise Lines*,
  897 F.2d 377 (9th Cir. 1990), *rev'd on other grounds*, 499 U.S.
  585 (1991) ............................................................................................................ 14

*Tatung Co. v. Shu Tze Hsu*,
  43 F. Supp. 3d 1046 (C.D. Cal. 2014) ................................................................ 12

*Terracom v. Valley Nat. Bank*,
  49 F.3d 555 (9th Cir. 1995) ................................................................................. 15

*Tuazon v. R.J. Reynolds Tobacco Co.*,
  433 F.3d 1163 (9th Cir. 2006) ............................................................................. 22

*United States v. Lopez*,
  104 F.3d 1149 (9th Cir. 1997) ............................................................................. 13

*United States v. Napoli*,
  179 F.3d 1 (2d Cir. 1999) ..................................................................................... 13

*United States v. O'Kane*,
  155 F.3d 969 (8th Cir. 1998) ............................................................................... 13

*Yahoo! Inc. v. La Ligue Contre Le Racisme*,
  433 F.3d 1199 (9th Cir. 2006) ............................................................................. 13

*Yavuz v. 61 MM, Ltd.*,
  576 F.3d 1166 (10th Cir. 2009) ........................................................................... 20

*Ziegler v. Indian River Cnty*,
  64 F.3d 470 (9th Cir. 1995) ............................................................................ 14, 15

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

v

PLAINTIFF ALMATY'S OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS FOR LACK OF PERSONAL JURISDITCTION, OR IN THE
ALTERNATIVE, ON THE BASIS OF *FORUM NON CONVENIENS*

**RULES**

Fed. R. Civ. Proc. 4(k)(2) ................................................................................ 2, 3, 16

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

PLAINTIFF ALMATY'S OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS FOR LACK OF PERSONAL JURISDITCTION, OR IN THE
ALTERNATIVE, ON THE BASIS OF *FORUM NON CONVENIENS*

# I.     INTRODUCTION

Defendants Viktor Khrapunov ("Viktor"), Leila Khrapunova ("Leila"), Iliyas Khrapunov ("Iliyas"), and Madina Ablyazova ("Madina") (collectively, "Defendants") embezzled hundreds of millions of dollars from the City of Almaty, Kazakhstan ("Plaintiff" or "Almaty") and laundered those funds into the United States to avoid detection and seizure by authorities.  Defendants now have filed a motion to dismiss for lack of personal jurisdiction or, in the alternative, based on the doctrine of *forum non conveniens* (the "Motion," Dkt. No. 19).  Defendants' motion consistently misrepresents Almaty's lawsuit, which seeks relief solely for actions *committed in the United States, in violation of United States law*.

This court has personal jurisdiction over Defendants because they engaged in substantial illegal conduct in the United States.  This is not a case where foreign criminals simply received and enjoyed the benefits of their ill-gotten gains in the United States, as Defendants argue.  *See* Motion at 8-9.  As alleged in Almaty's Complaint, (the "Complaint," Dkt. No. 1) and established in discovery, Defendants used shell companies, nominees, agents, and other forms of fraud and subterfuge to steal and later to disguise their stolen assets, and they deliberately chose to continue this illegal racketeering activity in the United States, and specifically California.  In fact, the Khrapunovs' laundering activities in the United States were vital to the success of their overall racketeering scheme.  After the Swiss authorities opened an investigation in 2012 into Viktor, Leila, Iliyas, and Elvira on suspicion of money laundering and froze all their known bank accounts, the Khrapunovs escalated their efforts to hide the stolen funds in the United States.  *Id*. ¶¶ 48, 59.  Iliyas and Madina laundered funds through the purchase of real property in California; Defendants used U.S. bank accounts at Wells Fargo and other institutions to engage in money laundering activities in the United States; and Iliyas and Leila used U.S. wires to transfer money in and out of California.  *Id*. at ¶¶ 17, 19, 25, 53-66.  Declaration of Julie R. F. Gerchik (hereafter "Gerchik

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

1

PLAINTIFF ALMATY'S OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS FOR LACK OF PERSONAL JURISDICTION, OR IN THE
ALTERNATIVE, ON THE BASIS OF *FORUM NON CONVENIENS*

1    Decl."), Ex. 1, at 5; Exs. 2-5.  This and other U.S. conduct was a conjoined and
2    essential part of the Defendants' overall racketeering scheme.

3        Defendants' Motion focuses entirely on Almaty's allegations concerning
4    Defendants' fraud in Kazakhstan.  While those allegations are necessary
5    background (*see* Complaint ¶¶ 34-47), the basis of every claim in the Complaint is
6    Defendants' racketeering conduct *in the United States*, not elsewhere.

7        Defendants' affidavits, which claim that Defendants have insufficient
8    contacts in the United States, are demonstrably false.  For example:  Iliyas claims
9    to have no involvement in the laundering real estate transactions, but emails
10   describe him as the "boss" of the transactions.  Gerchik Decl. Ex. 6.  Similarly,
11   Madina claims not to have been involved in such transactions, but emails establish
12   that she selected the property to be purchased and the price to be paid.  *Id*. Ex. 2.
13   Leila also claims not to have visited California but there are checks made out to her
14   at a California address.  *Id*. Ex. 7, at 8-10.  Defendants' characterization of their
15   domestic conduct is disingenuous at best.  Defendants did not merely make "four
16   house purchases" in the United States and decide to "vacation" here.  Rather, just
17   as they did in Kazakhstan and Switzerland, Defendants used a dizzying web of
18   sham entities, bank accounts and property "investments" to conceal and further
19   launder the proceeds of their theft of Almaty's assets in the United States.

20       Defendants' affirmative, illegal conduct in California subjects them to the
21   specific jurisdiction of this Court.  This conduct has caused the precise harm to the
22   integrity of the California and U.S. banking system that the Racketeering and
23   Corrupt Organizations Act ("RICO") and other anti-money laundering statutes
24   were designed to address.

25       Defendants' conduct is also sufficient to establish general jurisdiction under
26   the federal long-arm statute, Rule 4(k)(2) of the Federal Rules of Civil Procedure
27   ("Rule 4(k)(2)").  In cases where there are insufficient contacts with a specific
28   state, this statute allows for exercise of general jurisdiction where the defendants

LATHAM&WATKINS<sub>LLP</sub>
ATTORNEYS AT LAW
LOS ANGELES

2

PLAINTIFF ALMATY'S OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS FOR LACK OF PERSONAL JURISDICTION, OR IN THE
ALTERNATIVE, ON THE BASIS OF *FORUM NON CONVENIENS*

have requisite minimum contacts with the United States as a whole.  Each
Defendant clearly has such requisite contacts with the United States as a whole, as
they have set up multiple shell entities throughout the United States and transferred
money, property, and other assets to, from, and between those entities.  Defendants
even purposefully availed themselves of the U.S. Court system by using one of
their many shell entities to file a lawsuit in New York seeking to collect a debt
arising from their laundering activities.  Rule 4(k)(2), as well as applicable U.S.
law, makes clear that Defendants can and should be held accountable in the United
States for actions that they took in, and directed towards, this country.

Defendants' *forum non conveniens* argument also is flawed because the
United States is the only forum in which Plaintiff can seek redress for the conduct
occuring in the United States relating to assets in the United States.  Defendants'
claim that Swiss or Kazakh courts should hear this matter is unfounded because
neither court has the ability to compel and to hear evidence regarding U.S.
transactions, nor do they have the power to grant relief involving those U.S. assets
and transactions.

In short, there is no basis for the Court to grant Defendants' Motion, and
doing so would only induce Defendants to expand their illegal racketeering and
money laundering activities in the United States.  RICO was specifically designed
to prevent organized criminals from introducing and expanding their racketeering
activities in the United States, as Defendants have done here.

## II.   FACTUAL BACKGROUND REGARDING JURISDICTIONAL ARGUMENTS

### A.   Defendants' Racketeering Included Deliberate Attempts to Use the United States to Steal and Launder Assets, and To Hide Their Conduct from Kazakh and Swiss Authorities

In the Motion, Defendants rely heavily on cases where courts ruled that the
mere receipt of illicit funds in the United States derived from a fraud on foreign

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

3

PLAINTIFF ALMATY'S OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS FOR LACK OF PERSONAL JURISDITCTION, OR IN THE
ALTERNATIVE, ON THE BASIS OF *FORUM NON CONVENIENS*

territory is not sufficient to create personal jurisdiction.  However, that is <u>not</u> the case here.  Rather, here Defendants actively engaged in illegal racketeering activities in California to achieve their objective of stealing and laundering assets. Complaint ¶¶ 25-29.  In order to carry out their scheme, Defendants developed a complex maze of shell companies, nominees, and aliases to execute fraudulent asset and wire transfers in Kazakhstan, Switzerland and the United States, *id.* at ¶¶ 34-47, the latter of which is the sole basis for the damage claims in the Complaint.

Defendants and their co-conspirators executed the Khrapunov racketeering scheme as follows:  Viktor, Leila, and their associates perpetrated the fraudulent land and money transfers in Kazakhstan and then transferred their profits out of the country to bank accounts held by them and their children, Iliyas and Elvira.  *Id.* ¶¶ 25-27.  Defendants then conspired to launder those funds through U.S. bank accounts and real estate investments and to conceal them from the authorities.  *Id.* at ¶¶ 53-66.  Viktor and Leila sent Iliyas and Madina (along with Elvira and Dimtry) their stolen funds to launder through property purchases in the Central District.  Documents obtained from third parties demonstrate that front companies controlled by Leila and Iliyas made numerous large transactions into and within the United States to "clean" the money that Viktor embezzled from Almaty and then hid it from the authorities.  Gerchik Decl. Exs. 4, 5.

The Gornaya transaction alleged in the Complaint illustrates this racketeering activity well.  Complaint ¶¶ 38-41.  In 1998, Viktor, as mayor of Almaty, privatized Almaty-Demalys ("Demalys"), a state-owned enterprise that owned and managed buildings located on a city-owned land tract at 232 Gornaya Street in Almaty.  Gerchik Decl. Exs. 8-9; *see* Complaint ¶¶ 36-41.   Viktor then arranged for Demalys to be transferred to Viled Establishment ("Viled"), a company controlled by Leila, through two separate transactions, giving Leila 100% control over the company.  Complaint ¶ 38; Gerchik Decl. Exs. 10-13.  With Viled as the controlling entity, Viktor transferred ownership of the 232 Gornaya land plot

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

4

PLAINTIFF ALMATY'S OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS FOR LACK OF PERSONAL JURISDITCTION, OR IN THE
ALTERNATIVE, ON THE BASIS OF *FORUM NON CONVENIENS*

directly to Demalys.  Gerchik Decl. Exs. 14-15.  In 2003, Viled transferred its stake in Demalys to KazRealIncom ("KRI"), another entity controlled by Leila.  *Id*. Exs.16-17.  Using KRI, Leila transferred a substantial portion of the land from Almaty-Demalys to KarashaPlus, which was controlled by Leila's sister who immediately transferred the land to Leila.  *Id*. Exs. 18-19.  Leila then contributed a large tract of 232 Gornaya to the capital of Building Service Company ("BSC"), of which Leila was sole shareholder.  *Id*. Exs. 20-21.  She then arranged for BSC to be sold to a third party in a transaction that valued the land at 1,000 percent greater than the original acquisition price.  *Id*. Exs. 22-23; *see* Complaint ¶¶ 38-41.  The Defendants then took the proceeds of this and other similar frauds, and laundered them into the United States and elsewhere using the same scheme of fraudulent transactions between shell entities and nominees that disguise the true nature of the transactions and owners of the assets.

## B.     Defendants Deliberately Chose the United States to Engage in Their Money Laundering Activities

### 1.     Laundering Activities Using California Bank Accounts

Defendants have established multiple U.S. bank accounts, in particular, California bank accounts, often in the name of their sham entities, and made prodigious use of U.S. wires to transfer funds among those sham entities using these accounts.  For example, in response to a subpoena, Wells Fargo Bank produced to Plaintiff multiple bank records showing that Defendants engaged in active money laundering activities using California bank accounts.  Based on the Wells Fargo documents, there were at least 20 wire transfers between 2013 and 2014 which laundered approximately 4 million USD through Leila's and Iliyas's front companies.   Gerchik Decl. Ex. 4.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

5

PLAINTIFF ALMATY'S OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS FOR LACK OF PERSONAL JURISDICTION, OR IN THE
ALTERNATIVE, ON THE BASIS OF *FORUM NON CONVENIENS*

2.     Laundering Activity Through Purchases of California Real
Property

Iliyas and Madina, working with Elvira and Dmitry, also have laundered the stolen proceeds by acquiring California real estate through the same scheme of nominee and shell companies used in Kazakhstan and Switzerland that seek to disguise the true ownership of property and nature of the transactions.[1]  For example, as alleged in the Complaint, Iliyas and Madina took title of the first California property, 606 N. Alta Drive in Beverly Hills ("606 N. Alta"), using a sham entity called Candian International Ltd. ("Candian"), a defendant in *City of Almaty v. Viktor Khrapunov et al.,* Related Case No. CV14-3650-FMO-CW (C.D. 2014) ("Almaty I").  Gerchik Decl. Exs. 24-25, 26 at 5, 27-28.[2]  Iliyas controlled Candian, a California limited partnership (elsewhere, it is listed as a British Virgin Islands limited company), but disguised his control by using his Swiss attorney, Marc Gillieron, as the Director and Officer of Candian.  *Id*. Exs. 6, 25, 26 at 3-4. The property was paid for with two wire transfers from Mr. Gillieron's Swiss law firm.  *Id*. Exs. 27-28.

Despite Iliyas's efforts to cover up his involvement, discovery has established that Iliyas and Madina controlled the purchase.  The real estate agents congratulated Iliyas when his offer for the house was accepted, and Iliyas instructed Gillieron to wire the purchase price.  Gerchik Decl. Ex. 1, at 5 (email from Zach Goldsmith, Iliyas's realtor, to Iliyas on December 24, 2011: "Congratulations, the Seller's [sic] of 606 N. Alta have just accepted your offer of $5,450,000 usd," to which Iliyas replied: "Great news.  Can you please let Marc

---

[1] Elvira and Dmitry also purchased two other properties with illegally laundered funds in California: 2578 Hutton Drive in Los Angeles and 11986 Lockridge Road in Studio City.  Complaint ¶¶ 57, 61.

[2] Defendants in Almaty I have produced minimal documents in response to Almaty's written discovery.  Almaty believes that if the defendants in Almaty I fulfilled their discovery obligations, there would be substantial additional evidence of Defendants' contacts in California.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

6

PLAINTIFF ALMATY'S OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS FOR LACK OF PERSONAL JURISDICTION, OR IN THE
ALTERNATIVE, ON THE BASIS OF *FORUM NON CONVENIENS*

1    [Gillieron, director for Candian] know); *Id.* Ex. 26, at 4 (Iliyas directs Mr.

2    Gillieron to wire funds); *Id.* Ex. 29 (Iliyas plans to attend a photo shoot at the

3    house).

4         In 2012, Iliyas and Madina used another property on the same street to

5    launder the stolen funds – 628 N. Alta Drive in Beverly Hills ("628 N. Alta").  At

6    the outset, Iliyas's realtor (who also represented him in 606 N. Alta) made very

7    clear that Iliyas was in control of the transaction and shell entities by referring to

8    him as "the boss" and "the main guy who controls the entity [628 Holdings, LLC]

9    and makes the decisions."  *Id.* Ex. 6.  Defendants established another shell entity –

10   628 Holdings, LLC – to purchase 628 N. Alta.  *Id.* Ex. 30.  According to emails

11   between Iliyas and his realtor, Madina agreed to the $6.2 million purchase price.

12   *Id.* Ex. 2.  This property also was paid for with wire transfers from Switzerland,

13   where defendants have hidden their stolen money.  *Id.* Exs. 31-32.  The closing

14   documents for the transaction were delivered to Iliyas.  *Id.* Ex. 33.[3]

15        Additional evidence suggests that Leila also made use of the residences

16   purchased through sham entities by Iliyas and Madina.  Although Leila states in

17   her declaration that she has never been to California (Dkt. No. 19-4 ¶ 5), Wells

18   Fargo Bank documents show several checks addressed to Leila at a Studio City

19   address.  Gerchik Decl. Ex. 7 at 8-10.  Further, deposition testimony in Almaty I

20   revealed that Elvira actually described the 628 N. Alta Drive property as *her*

21   *mother's house.*  *Id.* Ex. 35 [Woloz Depo. 75:4-15].

22

23

24   [3] Moreover, there was a tenant occupying the 628 N. Alta premises at the time

25   Iliyas purchased the property, and that lease was assigned to buyer Candian (later
     628 Holdings, LLC), with Elvira signing the document.  Gerchik Decl. Ex. 34, at 2.

26   Subsequent to this agreement, the tenant paid roughly $22,000 a month to 628

27   Holdings LLC.  *See id.*

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

7

PLAINTIFF ALMATY'S OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS FOR LACK OF PERSONAL JURISDICTION, OR IN THE
ALTERNATIVE, ON THE BASIS OF *FORUM NON CONVENIENS*

3.      Laundering Activity Through Real Property and Other
Transactions Elsewhere in the U.S.

Defendants also engaged in racketeering activity in New York and Delaware, again using shell companies and bogus transactions to steal and to hide assets.  With significant funding from Leila, Iliyas manages and controls Swiss Development Group Capital SA ("SDG")[4], a Swiss company, which owns Luxembourg company Triadou SPV S.A. ("Triadou"), which in turn invested in and owned 50% of Delaware company CF 125 West Member ("West Member"), which Almaty is informed and believes continues to own 75% of Delaware company 135 West Street Holder, which owns 135 West 52nd Street Mezz LLC, which owns Delaware company 135 West 52nd Street Owner LLC, which owns a hotel in New York worth over $100 million.  Complaint ¶¶ 65-66.

On November 10, 2014, Triadou filed a series of law suits in New York state court against prominent developer Chetrit Group and West Member seeking to collect on a debt.  Gerchik Decl. Ex. 38.  Illustrating Iliyas's involvement in the matter, Chetrit and other defendants argued to the court that they had been instructed to make payments to SDG, Iliyas's company that headed the web of companies owning the hotel.  The court ultimately granted Triadou's motion, thus establishing that Defendants have purposefully availed themselves in the U.S. by using the U.S. courts to help recover assets Defendants had laundered.  *Id*. Ex. 39, at 1.

Leila and Viktor also have availed themselves of U.S. forums other than California.  For example, front companies controlled by Leila and Iliyas received and sent millions of dollars in large, and often round number, wire transfers

---

[4] Although a majority share of SDG was acquired by Swiss entrepreneur, Philippe Glatz, in 2013 (Gerchik Decl. Ex. 36), it appears as though Iliyas continues to control SDG, and thus Triadou, through Marc Gillieron, Iliyas's personal attorney and the current CEO and Chairmain of the Board of SDG.  Gerchik Decl. Ex. 36 at 3; *id*. at Ex. 37.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

8

PLAINTIFF ALMATY'S OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS FOR LACK OF PERSONAL JURISDICTION, OR IN THE
ALTERNATIVE, ON THE BASIS OF *FORUM NON CONVENIENS*

1   through JP Morgan bank accounts in New York between 2012 and 2013.  *Id*. Ex. 5.

2   Leila also invested millions into Swiss holding companies SDG and SPG, which

3   were involved in the New York investments and Delaware shell companies.

4   Complaint ¶¶ 49-52.  In addition, Viktor is publishing a book in the United States

5   through Columbia University Press, thus availing himself of U.S. commercial and

6   copyright laws.  Gerchik Decl. Ex. 40.

7        **C.**    **Defendants Submitted False Declarations In Support of Their**

8                  **Motion To Dismiss**

9        In support of their Motion, Defendants Madina, Leila, and Viktor submitted

10   declarations containing false information.  *See generally* Dkt. Nos. 19-3, 19-4, and

11   19-5.  For example, Iliyas claimed that he is a resident of Switzerland, has traveled

12   to the U.S. only on a limited basis, and did not own property in the U.S.; however,

13   as previously noted, Iliyas's front companies do own real estate property in

14   California and he is the "boss" on these purchases. (See *infra* Section II.B.2.)

15        Similarly, Madina declares that she "had no involvement in the purchase or

16   sale of these properties whatsoever," but the documents establish that this too is a

17   lie. Dkt. No. 19-3, ¶ 7; Gerchik Decl. Exs. 2, 3, 41.  Moreover, it was *Madina* who

18   chose 606 N. Alta for purchase.  *Id*. Exs. 2, 3.

19        Leila testified that she has never lived in California, but a bank document

20   shows a check addressed to her at *a Studio City address*, and at least one witness

21   was told that the 628 N. Alta Drive property *belonged to Leila*.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

1   *Id.* Ex. 7, at 9; Ex. 35 [Woloz Depo. 75:4-15].

2       Viktor's declaration failed to admit at all the book he plans to have

3   published in the U.S., and the substantial profits he hopes to gain from doing

4   business in this country. *Id.* Ex. 40. Finally, neither Viktor nor Leila discuss their

5   involvement with the Swiss holding companies that conduct extensive business in

6   New York and Delaware.[5]

7       In short, Defendants' false declarations do not support Defendants' position

8   and instead actually corroborate Almaty's allegations that Defendants use

9   subterfuge and deception to disguise the true nature of their business transactions.

10  **III.   THIS COURT HAS PERSONAL JURISDICTION OVER EACH**

11  **DEFENDANT**

12      **A.   Legal Standard for Personal Jurisdiction**

13      Almaty easily meets the favorable evidentiary standard for establishing facts

14  sufficient to enable the Court to exercise personal jurisdiction over Defendants.

15  *See Dole Food Co. v. Watts*, 303 F.3d 1104, 1108 (9th Cir. 2002) (citing *Sher v.*

16  *Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990)). In the absence of an evidentiary

17  hearing, a plaintiff need only make a prima facie showing of facts supporting the

18  exercise of jurisdiction. *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995).

19  "Although the plaintiff cannot simply rest on the bare allegations of its complaint,

20  uncontroverted allegations in the complaint must be taken as true." *Dole Food*

21  *Co.*, 303 F.3d at 1108 (internal citations omitted). Any conflicting evidence

22  between the parties (e.g., over statements in affidavits) must be resolved in the

23

24  [5] Viktor and Leila state in their respective declarations that they have been
       divorced since November 29, 2010. Dkt. No. 19-4, ¶ 3.; Dkt. No. 19-5, ¶ 4.

25     Both Viktor and Leila maintain public websites, however, and each of their
       publicly available biographies refers to the other as "wife" and "husband" with

26     no mention of divorce. Gerchik Decl. Ex. 42, at 8; Ex. 43, at 1. Almaty
       believes that if they divorced, additional discovery may reveal that Viktor and

27     Leila divorced for reasons relating to concealing assets, which may provide
       additional evidence of wrongdoing.

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

10

PLAINTIFF ALMATY'S OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS FOR LACK OF PERSONAL JURISDITCTION, OR IN THE
ALTERNATIVE, ON THE BASIS OF *FORUM NON CONVENIENS*

1   plaintiff's favor.  *Id.* (citing *AT&T v. Compagnie Bruxelles Lambert*, 94 F.3d 586,

2   588 (9th Cir. 1996); *Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d

3   1082, 1087 (9th Cir. 2000), *rev'd on other grounds Yahoo! Inc. v. La Ligue Contre*

4   *Le Racisme Et L'Antisemitisme,* 433 F.3d 1199 (9th Cir. 2006) ("Because the

5   prima facie jurisdictional analysis requires us to accept the plaintiff's allegations as

6   true, we must adopt [plaintiff]'s version of events for purposes of this appeal").

7   **B.    Defendants Are Subject to This Court's Specific Jurisdiction**

8          In order for this Court to exercise specific jurisdiction over Defendants, "(1)

9   [t]he non-resident defendant must purposefully direct his activities or consummate

10  some transaction with the forum or resident thereof, or perform some act by which

11  he purposefully avails himself of the privileges of conducting activities in the

12  forum, thereby invoking the benefits and protections of its laws; (2) the claim must

13  be one which arises out of or relates to the defendant's forum-related activities; and

14  (3) the exercise of jurisdiction must comport with fair play and substantial justice,

15  i.e. it must be reasonable." *Dole Food Co.*, 303 F.3d at 1111 (citing *Caruth v.*

16  *International Psychoanalytical Ass'n*, 59 F.3d 126, 127 (9th Cir. 1995)).  "Specific

17  jurisdiction may be exercised with a lesser showing of minimum contacts than is

18  required for the exercise of general jurisdiction." *ACORN v. Household Int'l, Inc.*,

19  211 F. Supp. 2d 1160, 1164 (N.D. Cal. 2002).

20              1.    Defendants Purposefully Directed Affirmative Actions at

21                    California to Further their Racketeering Scheme

22         Under the first prong of the specific jurisdiction analysis, tortious conduct

23  must be "expressly aimed" at the forum state in which the harm occurs.  *Calder v.*

24  *Jones*, 465 U.S. 783, 789 (1984).  In *Calder*, the Supreme Court devised a three-

25  part test to determine whether the first "purposeful direction" prong of specific

26  jurisdiction is met.  *Id.*  Under the "Calder effects" test, Defendants "must have (1)

27  committed an intentional act, which (2) was expressly aimed at the forum state,

28  and (3) caused harm, the brunt of which is suffered and which the defendant knows

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

11

PLAINTIFF ALMATY'S OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS FOR LACK OF PERSONAL JURISDICTION, OR IN THE
ALTERNATIVE, ON THE BASIS OF *FORUM NON CONVENIENS*

1  is likely to be suffered in the forum state." *Bancroft & Masters, Inc.*, 223 F.3d at
2  1087 (citing *Calder*, 465 U.S. at 789).

3         All of these conditions are met here as to each Defendant.  As discussed in
4  detail above (*see* Section II.A and B), Defendants and their sham entities have
5  purchased millions of dollars of property and initiated and received millions of
6  dollars of wire transfers expressly aimed at the state of California in order to
7  "clean" their stolen funds.  In doing so, Defendants have purposefully used
8  California law and banking institutions to engage in their money laundering
9  activities and thus caused great harm in California.

10        Defendants try to confuse the issue by incorrectly suggesting that Almaty
11  must be a resident of California to allege it suffered harm.  Yet Ninth Circuit case
12  law is clear: Almaty need not be a resident of California to have suffered harm in
13  California, to bring suit in California, or for a federal court in California to exercise
14  jurisdiction over Defendants.  *Tatung Co. v. Shu Tze Hsu*, 43 F. Supp. 3d 1036,
15  1049 (C.D. Cal. 2014) (citing *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775
16  (1989) ("plaintiff's residence in the forum State is not a separate requirement, and
17  lack of residence will not defeat jurisdiction established on the basis of defendant's
18  contacts").

19        Defendants also argue that their actions have caused no harm in California,
20  but Defendants ignore the very nature of the harm caused by their money
21  laundering activities.  "Defendants' money laundering and related [] offenses
22  injured the Plaintiff[] by allowing Defendants *to continue to deprive the Plaintiff[]
23  of the use and benefit" of stolen funds.  Maiz v. Virani*, 253 F.3d 641, 674 (11th
24  Cir. 2001) (emphasis added); *see also Lugosch v. Congel*, 443 F.Supp.2d 254, 272
25  (N.D.N.Y. 2006) (defendants' wire transfer activity "concealed [the RICO
26  enterprise's] fraudulent conduct . . . and *made possible the continuation and
27  expansion of the fraudulent scheme*") (emphasis added); *Exec. Comm.
28  Representing the Signing of the Archdiocese of the Western U.S. v. Kaplan*, No.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

12

PLAINTIFF ALMATY'S OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS FOR LACK OF PERSONAL JURISDITCTION, OR IN THE
ALTERNATIVE, ON THE BASIS OF *FORUM NON CONVENIENS*

1   CV 03-8947, 2004 U.S. Dist. LEXIS 31799 (C.D. Cal. Sept. 16, 2004) ("it was the

2   transfer of funds that made Individual Plaintiffs' injuries complete").

3          Defendants' conduct also harmed California and the United States, as both

4   are harmed whenever a crime is committed in its jurisdiction.  For example, in

5   *Philippines v. Marcos*, 862 F.2d 1355 (9th Cir. 1988), the Republic of the

6   Philippines sued its former president and his wife under the United States' civil

7   RICO statute for embezzling funds from the state and transferring them into the

8   U.S., in part to invest in Beverly Hills real estate and banks.  The Ninth Circuit

9   held that a public official's embezzlmenet of state funds and later laundering them

10  in California palpably harmed the United States and California.  *Id*. at 1357-1358;

11  s*ee also United States v. Lopez*, 104 F.3d 1149, 1150-1151 (9th Cir. 1997)

12  (discussing societal interests harmed by money laundering that enables criminals to

13  obtain the benefits of illicit income ); *United States v. Napoli*, 179 F.3d 1, 7-8 (2d

14  Cir. 1999) (noting that society is harmed when proceeds of illegal activity are used,

15  concealed, or dispersed); *United States v. O'Kane*, 155 F.3d 969, 972 (8th Cir.

16  1998) ("money laundering harms society's interest in discovering and deterring

17  criminal conduct, because . . . the criminal vests that money with the appearance of

18  legitimacy.").

19         It is irrefutable that Defendants expressly aimed their conduct at this forum.

20  Moreover, the fact that Almaty was first harmed by Defendants' illegal conduct in

21  Almaty is not a bar to this Court's jurisdiction.  As the Ninth Circuit has stated,

22  "the 'brunt' of the harm need not be suffered in the forum state.  If a

23  jurisdictionally sufficient amount of harm is suffered in the forum state, it does not

24  matter that even more harm might have been suffered in another state."  *Yahoo!*

25  *Inc.*, 433 F.3d at 1207.

26

27

28

2.    Almaty's Claims Arise out of Defendants' Activities in California

Almaty's causes of action are expressly based on Defendants' conduct in California.  "The claims arise out of a defendant's forum-related activities if plaintiff would not have a cause of action but for defendant's contacts with the forum."  *Planned Parenthood, Inc. v. American Coalition of Life Activists,* 945 F. Supp. 1355 (D. Or. 1996) (citing *Ziegler v. Indian River Cnty*, 64 F.3d 470, 474 (9th Cir. 1995)).  The "but for" test "should not be narrowly applied; rather the requirement is merely designed to confirm that there is some nexus between the cause of action and defendant's contact with the forum."  *Id.* (citing *Shute v. Carnival Cruise Lines*, 897 F.2d 377, 385 (9th Cir. 1990), *rev'd on other grounds*, 499 U.S. 585 (1991)).

Here, it is clear that *but for* Defendants' activities in California – their purchase of property and assets, and banking activity, in California in order to launder their stolen funds – Almaty would not be suffering harm in California.

Defendants argue that the supposedly "de minimis contacts" of Viktor, Leila, and Madina are unrelated to Almaty's claims.  (Motion, pp. 9-10.)  The allegedly "de minimis contacts" of Viktor, Leila, and Madina attested to in their respective declarations, however, are shown to be false (as discussed in Section II.C).  In addition, the allegations and evidence show that Defendants engaged in activity in California that caused harm in California.

3.    Given Defendants' Extensive California Activities Causing Harm to Almaty, it is Fair, Just, and Reasonable for the Court to Exercise Jurisdiction over Defendants

In determining whether exercise of jurisdiction is fair, just and reasonable, the Court must weigh seven factors: (1) the extent of the defendants' purposeful injection into the forum; (2) the burden on defendants of litigating in the forum; (3) the extent of potential conflict with the sovereignty of the defendants' state; (4) the

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

14

PLAINTIFF ALMATY'S OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS FOR LACK OF PERSONAL JURISDICTION, OR IN THE
ALTERNATIVE, ON THE BASIS OF *FORUM NON CONVENIENS*

1   forum state (California)'s interest in adjudicating the dispute; (5) the most efficient

2   judicial resolution of the controversy; (6) the importance of the forum to Almaty's

3   interest in convenient and effective relief, and (7) the existence of an alternative

4   forum. *Ziegler*, 64 F.3d at 475 (citing *Terracom v. Valley Nat. Bank*, 49 F.3d 555,

5   561 (9th Cir. 1995)).  All of these factors support the exercise of jurisdiction.

6         Defendants' purposeful injection into California (Factor 1), as discussed in

7   detail above in Section II.B.1 and 2, has been extensive, has involved real estate

8   purchases and banking activity with California and U.S. banks, and was designed

9   to hide Defendants' involvement.  The burden of litigating in California (Factor 2)

10  is minor.  Iliyas and Madina, in conjunction with Elvira and Dmitry, have come to

11  California to purchase property and, as they even admit, vacation in California.

12  Gerchik Decl. Exs. 38, 39; Dkt. No. 19-3 ¶ 5.  Leila and Viktor have used

13  California to set up wire transfers of their stolen funds.  They have a daughter, son-

14  in-law, and three grandchildren that reside in the Central District, and another son

15  and daughter-in-law who come to California as needed for business.  Moreover,

16  Defendants have hired competent counsel, Quinn Emmanuel Urquhart & Sullivan

17  LLP to represent them. The burden on Defendants, in light of their activity, is not

18  so substantial that it outweighs Almaty's interest in recovering its stolen property

19  located in this forum.

20        Factors 3, 5, and 7 address whether Switzerland would be an adequate

21  alternative forum.  First and foremost, the conduct alleged in the Complaint

22  occurred *in the United States, in violation of U.S. laws*, which is not actionable in

23  Switzerland.  Second, Defendants have asserted no facts to suggest that this

24  Court's exercise of jurisdiction would conflict with the sovereignty of either

25  Kazakhstan or Switzerland.  Moreover, Defendants' statement that "the Swiss

26  authorities have been investigating Plaintiff's allegations against Defendants for

27  more than two years" (Motion, p. 12) is incorrect.  The Swiss Government is

28  investigating Defendants on suspicion of money laundering in Switzerland in

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
LOS ANGELES

15

PLAINTIFF ALMATY'S OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS FOR LACK OF PERSONAL JURISDICTION, OR IN THE
ALTERNATIVE, ON THE BASIS OF *FORUM NON CONVENIENS*

violation of *Swiss law*.  There is no evidence to suggest that the Swiss authorities intend to investigate and prosecute extraterritorial conduct occuring in the United States.  Moreover, contrary to Defendants' arguments, the State of California has an interest in protecting its citizens, financial institutions, and other businesses from unwittingly participating in the money laundering activities, as well as preventing the societal harm arising from money laundering (Factor 4).  *See infra* at p. 13.

Finally, litigating in the Central District is indeed essential to Almaty's convenient and effective relief (Factor 6).  Millions of dollars in Defendants' stolen funds are now located in the Central District of California, and neither Swiss nor Kazakh courts can provide any relief for such conduct nor do they have power over such California property.

## C.   In the Alternative, Defendants Are Subject To Jurisdiction Pursuant To Rule 4(k)(2) of the Federal Rules of Civil Procedure

Even if Defendants lacked sufficient contacts in California, Defendants would still be subject to this Court's jurisdiction under Rule 4(k)(2) of the Federal Rules of Civil Procedure ("Rule 4(k)(2)").  Rule 4(k)(2) gives federal courts jurisdiction over foreign defendants who do not have sufficient contacts with any one state, but who have sufficient contacts with the United States as a whole to warrant personal jurisdiction in any federal court.  *Monster Cable Products, Inc. v. Euroflex S.R.L.,* 642 F. Supp. 2d 1001, 1008-10 (N.D. Cal. 2009).  To exercise jurisdiction under Rule 4(k)(2), three requirements must be met: "(1) the claim against the defendant must arise under federal law, (2) the defendant must not be subject to the personal jurisdiction of any state court of general jurisdiction, (3) the federal court's exercise of personal jurisdiction must comport with due process."  *Hassen v. Nahyan,* No. , 2010 WL 9538408, *7 (C.D. Cal. Sept. 17, 2010) (citing *Pebble Beach Co.v. Caddy,* 453 F.3d 1151, 1159 (9th Cir. 2010)).  "The … due process analysis is identical to the analysis to the forum state except the relevant

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

16

PLAINTIFF ALMATY'S OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS FOR LACK OF PERSONAL JURISDICTION, OR IN THE
ALTERNATIVE, ON THE BASIS OF *FORUM NON CONVENIENS*

forum is the United States as a whole." *Monster Cable Products,* 642 F. Supp. 2d at 1009 (citing *Pebble Beach,* 453 F.3d at 1159).

In this case, the first two prongs are easily met: Almaty's claims arise out of federal law and Defendants have declined to name another state in which Defendants are subject to personal jurisdiction. *Id.* (citing *Holland Am. Line, Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 461 (9th Cir. 2007) ("[A] defendant who wants to preclude use of Rule 4(k)(2) has only to name some other state in which the suit could proceed. Naming a more appropriate state would amount to a consent to personal jurisdiction there . . . *If, however, the defendant contends that he cannot be sued in the forum state and refuses to identify any other where suit is possible, then the federal court is entitled to use Rule 4(k)(2).* This procedure makes it unnecessary to traipse through the 50 states, asking whether each could entertain the suit.") (emphasis added)).

The third prong – that federal court's jurisdiction must comport with due process – is satisfied under a due process analysis analogous to the minimum contacts analysis conducted in Section III, which essentially asks whether exercising jurisdiction over Defendants in a U.S. federal court would be reasonable. *Id.* at 1009-10 ("The Ninth Circuit's flexible approach allows for a lesser showing of contacts if considerations of reasonableness are met."). In a Rule 4(k)(2) jurisdiction analysis, the Court must analyze defendants' contacts using the traditional framework, except that the forum is the United States, rather than any one particular district court. *Id.*

In addition to Defendants' extensive wire transfer and business activity in California, the Complaint details conduct in New York and Delaware that furthers Defendants' racketeering scheme. For example, Iliyas and Leila transferred millions of dollars stolen by Viktor into New York bank accounts in order to invest in New York real estate using Delaware companies (along with foreign entities). Complaint ¶¶ 49-51. As discussed in Section II.B.3 above, Iliyas manages and

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

17

PLAINTIFF ALMATY'S OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS FOR LACK OF PERSONAL JURISDICTION, OR IN THE
ALTERNATIVE, ON THE BASIS OF *FORUM NON CONVENIENS*

1   controls Swiss Development Group Capital SA ("SDG"), and its subsidiary,

2   Luxembourg company Triadou, which in turn invests in various Delaware

3   companies and New York commercial real estate.  Complaint ¶¶ 65-66.

4   Defendants have even availed themselves of the New York state court system to

5   collect a debt on behalf of one of their shell entities – Triadou.  In addition, Viktor

6   has signed a book deal with Columbia Press – clear evidence of Viktor making

7   sales and engaging in business.  *See Bancroft*, 223 F.3d at 1086 (citations omitted).

8   As such, where a complaint "details the defendants [sic] contact with the [forum

9   state] and other states in the United States . . . [it] permits this Court to exercise

10  jurisdiction in keeping with the notions of due process."  *Larsen v. Lauriel Invs.,*

11  *Inc.*, 161 F. Supp. 2d 1029, 1051 (D. Ariz. 2001).

12          **D.      The Court Should Permit Jurisdictional Discovery**

13          The Court should permit Plaintiff to conduct jurisdictional discovery if any

14  question remains as to whether or not there is personal jurisdiction over

15  Defendants here.  Indeed, jurisdictional discovery is appropriate "where pertinent

16  facts bearing on the question of jurisdiction are controverted…"  *Data Disc, Inc. v.*

17  *Systems Tech. Assoc., Inc.*, 557 F. 2d 1280, 1285 n. 1 (9th Cir. 1977).  The

18  discovery completed to date has provided substantial evidence of Defendants'

19  contacts with the United States, as well as enabled Almaty to establish that

20  Defendants have submitted false and misleading information to the Court in their

21  declarations.  Given Defendants use of multiple shell companies to disguise their

22  involvement in transactions, discovery is necessary to allow for the true facts to be

23  discovered and disclosed.

24  **IV.     THERE IS NO ADEQUATE ALTERNATIVE FORUM FOR**

25          **ALMATY'S CLAIMS AND THEREFORE THIS CASE CANNOT BE**

26          **DISMISSED ON THE BASIS OF *FORUM NON CONVENIENS***

27          Defendants have not and cannot meet the heavy burden required to show

28  that the doctrine of *forum non conveniens* justifies dismissal of Almaty's suit.  A

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

18

PLAINTIFF ALMATY'S OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS FOR LACK OF PERSONAL JURISDITCTION, OR IN THE
ALTERNATIVE, ON THE BASIS OF *FORUM NON CONVENIENS*

party moving to dismiss on *forum non conveniens* grounds bears a heavy burden to demonstrate (1) that there is an adequate alternative forum, and (2) that the balance of private and public interest factors favors dismissal. *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1118 (9th Cir. 2002); *Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1142-43 (9th Cir. 2001). Moreover, "[i]n carrying this burden, [the moving party] must provide sufficient information to enable the district court to balance the parties' interests." *Contact Lumber Co. v. P.T. Moges Shipping Co.* Ltd., 918 F.2d 1446, 1449 (9th Cir. 1990). The Ninth Circuit has explained that *forum non conveniens* is an "exceptional tool to be employed sparingly." *Monegro v. Rosa*, 211 F.3d 509, 514 (9th Cir. 2000).

### A.   Switzerland Is Not An Adequate Alternative Forum

Defendants have failed to point to any facts or submit any affidavits whatsoever demonstrating that Switzerland is an adequate alternate forum to address Almaty's claims in the U.S. To determine whether a suit should be dismissed on *forum non conveniens* grounds, the court acts as a factfinder. *See Cheng v. Boeing Co.*, 708 F.2d 1406, 1410 (9th Cir. 1983) (Noting the standard to be applied to a motion for dismissal on *forum non conveniens* grounds is whether defendants have made a clear showing of facts.); *see also Lacey v. Cessna Aircraft Co.*, 932 F.2d 170, 182 (3rd Cir. 1991). The court "make[s] the determination of adequacy on a case by case basis, with the party moving for dismissal bearing the burden of proof." *Leetsch v. Freedman*, 260 F.3d 1100, 1103 (9th Cir. 2001) (citing *Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1143 (9th Cir.2001)); *see Fiscus v. Combus Fin. AG*, 2006 U.S. Dist. LEXIS 41016, at *37-40 (D.N.J. June 20, 2006) (holding that the defendant did not satisfy his burden to show Switzerland was an adequate alternative forum because defendant did not submit any affidavits but instead merely "cite[d] caselaw from the Second Circuit Court of Appeals . . . for the proposition that Switzerland is generally an adequate alternative forum  . . . ").

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
LOS ANGELES

19

PLAINTIFF ALMATY'S OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS FOR LACK OF PERSONAL JURISDICTION, OR IN THE
ALTERNATIVE, ON THE BASIS OF *FORUM NON CONVENIENS*

None of the authorities on which Defendants rely hold that Swiss courts have the power to remedy the wrongdoing *in the United States* that Almaty alleges in the Complaint. *See* Motion at 16-17; *cf. Yavuz v. 61 MM, Ltd.*, 576 F.3d 1166 (10th Cir. 2009) (focus of the allegations were contract claims between a Turkish citizen and a dual citizen of Switzerland and Syria that were *governed by a Swiss choice-of-law provision*). *LaSala v. UBS, AG*, 510 F. Supp. 2d 213 (S.D.N.Y. 2007), cited by Defendants, is also easily distinguishable as the *LaSala* plaintiff brought claims based on violations of *Swiss statutory law* against a *Swiss bank* for conduct that occurred *in Switzerland*. *Id*. at 220. Here, Almaty does not seek redress for Defendants' conduct in Switzerland, but rather for Defendants' illegal money laundering activities *here in the United States* in violation of *U.S. law* and affecting U.S. property, companies and financial institutions.

## B. Defendants Fail to Demonstrate that the Private Interest Factors Support Dismissal

A "plaintiff's choice of forum ordinarily will not be disturbed unless the 'private interest' and 'public interest' factors strongly favor trial in the foreign country". *Dole Food Co.*, 303 F.3d at 1118. Defendants do not and cannot meet their burden to show that the private interest factors "strongly favor trial" in Switzerland. The private interest factors to be considered in analyzing the applicability of the *forum non conveniens* doctrine are: (a) the residence of the parties and witnesses; (b) the forum's convenience; (c) access to evidence; (d) whether unwilling witnesses can be compelled to testify; (e) the cost of bringing witnesses to trial; (f) the enforceability of the judgment; and (g) all other practical problems. *Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216, 1229 (9th Cir. 2011) (citing *Boston Telecomms. Grp. v. Wood*, 588 F.3d 1201, 1206–07 (9th Cir.2009)).

These factors strongly favor the Central District as the forum. The key witnesses to the California and U.S. transactions are in California and the U.S., can

be compelled to testify, and it will be cost efficient to have these key witnesses testify in California.  Most importantly, a judgment relating to transactions and real estate in California and the United States is enforceable in California and the United States.  No Swiss or Kazakh court is capable of hearing claims based on conduct in the United States, of compelling testimony of U.S. real estate agents, financial institutions, or other key witensses to the U.S. laundering, or enforcing judgments against property in the U.S.  Defendants emphasize that many transactions at issue occurred in Kazakhstan, which is true.  But proving the theft of funds from Kazakhstan is only part of this case – the gravamen of this case and the basis of the relief sought in this case is the laundering transactions that occurred in the United States.

### C.   Defendants Fail to Demonstrate that the Public Interest Factors Support Dismissal

The public interest factors, which include: (a) local interest; (b) the court's familiarity with governing law; (c) burden on local courts and juries; (d) congestion in this court; and (e) the costs of resolving a dispute unrelated to this forum, also support Plaintiff's position.  *Carijano* , 643 F.3d at 1232 (citing *Boston Telecomms. Group, Inc. v. Wood*,  588 F.3d 1201,1211 (9th Cir. 2009)).  First, the Central District of California has a strong interest in adjudicating a dispute over property, businesses, and persons within its jurisdiction (factor (a)).  Defendants point to *Medicor AG v. Arterial Vascular Engineering*, to show that Switzerland is an adequate alternate forum, but that "action present[ed] a significant Swiss interest."  C-96-2979 MHP, 1997 WL 68564, at *4 (N.D. Cal. Jan. 30, 1997) aff'd, 141 F.3d 1177 (9th Cir. 1998).  In contrast to this case, the *Medicor* plaintiffs were Swiss, the subject of the action was located in Switzerland, all relevant parties were Swiss, the governing law was Swiss, and the remedy plaintiff sought to impose was in Switzerland affecting a Swiss resident.  *Id.*

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

21

PLAINTIFF ALMATY'S OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS FOR LACK OF PERSONAL JURISDITCTION, OR IN THE
ALTERNATIVE, ON THE BASIS OF *FORUM NON CONVENIENS*

1    Additionally, this Court is well versed in the governing law relating to RICO

2  claims and California state law claims (factor (b)). Even though some analysis of

3  foreign law may be required to establish certain elements of the predicate acts, the

4  focus of this case and the wrong for which Plaintiff seeks redress is activities that

5  took place in the Central District of California and elsewhere in the United States

6  which violated U.S. law.  As recognized by the Ninth Circuit, "[j]uries routinely

7  address subjects that are totally foreign to them," involving "foreign cultures and

8  foreign languages."  *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1181–

9  82 (9th Cir. 2006).  This case is no different.

10    While this lawsuit will add to an already overloaded Court docket, it is the

11  only thing preventing Defendants from expanding their criminal enterprise in the

12  United States.  For all of these reasons, Defendants have failed to establish their

13  "substantial burden to persuade the district court to invoke the 'exceptional tool' of

14  *forum non conveniens* and deny Plaintiff[] access to a U.S. court."  *Carijano* , 643

15  F.3d at 1236 (citing *Monegro*, 211 F.3d at 514).

16  **V.    CONCLUSION**

17    Defendants' attempt to have Almaty's lawsuit dismissed for lack of personal

18  jurisdiction or *forum non conveniens* is only their latest effort to conceal their

19  racketeering activities and continue on California soil, using California property,

20  California financial institutions, and the protection of the California legal system to

21  hide funds wrongfully stolen from the people of Almaty.  Almaty respectfully

22  requests that the Court deny Defendants' Motion.

23

24  Dated:  August 21, 2015                LATHAM & WATKINS LLP

25

26                                By:   __/s/_____
                                        David J. Schindler
27                                      Manny A. Abascal
                                        Julie R. F. Gerchik
28                                **Attorneys for Plaintiff City of Almaty**

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

22

PLAINTIFF ALMATY'S OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS FOR LACK OF PERSONAL JURISDITCTION, OR IN THE
ALTERNATIVE, ON THE BASIS OF *FORUM NON CONVENIENS*